# Appeal of Harper et al.

1. In cities of the third class, in order to authorize the assessment of the cost of putting in a sewer, upon the adjoining lots, the various requirements prescribed by § 47 of the Act of May 23d, 1874 (P. L. 259) must be complied with before the sewer is constructed; and under the Act of May 1st, 1876 (P. L. 94) an ordinance authorizing the construction of a sewer, before the provisions of said Act, as to estimate, maps, schedules, &c., are complied with, is null and void.

2. The City Council of Meadville passed an ordinance and resolution authorizing the laying of certain sewer pipes in sewer district No. 1, but did not comply with the provisions of the above Acts; the pipes were actually laid, however, in the autumn of 1881. In March, 1882, the City Council passed another ordinance for the completion of the sewer system in district No. 1, and this time complied with the requirements of said Acts. In pursuance of the latter ordinance a system of sewers was laid, of which the pipes laid in 1881 formed a part. An ordinance was then passed assessing the cost of the sewers on the abutting lots; and the property owners along the part laid in 1881 filed a bill for a perpetual injunction against the collection of the assessments, as to their lots:

*Held*, that the court below committed no error in granting the injunction. The city having laid the pipes in 1881 without previous compliance with the Acts of Assembly, had no power to pass an ordinance imposing the cost on the abutting lots.

3. The defendants contended that the complainants had an adequate remedy at law, by appeal to the Court of Common Pleas, and, therefore, that equity had no jurisdiction:

*Held*, that conceding that an appeal might lie, under the statute, from the irregular assessment of a tax, yet that was not this case. Here, the tax assessment was not under the statute, but in direct conflict with it; and the ordinance authorizing the assessment being null and void, equity had power to enjoin the enforcement of it.

February 6th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN, J., absent.

APPEAL from the Court of Common Pleas of *Crawford county*: Of January Term, 1885, No. 301.

Bill in equity, between Alexander Powers and five others, property owners in the city of Meadville, complainants, and W. S. Harper, Mayor, et al., defendants, praying for a perpetual injunction, to restrain the collection of certain municipal assessments or taxes, levied by the city authorities, for the construction of a sewer in front of the complainants' property.

A demurrer to the bill, on the ground that the complainants had a full and adequate remedy at law, was overruled by the court, and the defendants filed an answer, whereupon the cause was referred to J. B. Brawley, Esquire, as examiner and Master, before whom the following facts appeared:—

Meadville is a city, subject to the provisions of §§ 37, 47, and 48 of the Act of Assembly entitled "An Act dividing the cities of this state in three classes," approved May 23d, 1874, and amended by Act of April 11th, 1876, "regulating the collection of municipal claims and sewerage."

In pursuance of the 47th section of the above Act the City Council, on August 3d, 1881, passed an ordinance, No. 222, erecting and defining the limits of sewer district No. 1 in the city of Meadville, which was approved the same day. On October 9th, 1881, the City Council adopted a supplement to ordinance No. 222, by which the southern limits of sewer district No. 1 were somewhat changed.

Immediately after the passage of ordinance No. 222, to wit: August 3d, 1881, the City Council passed a resolution providing for the construction of a sewer, along certain streets named, "in accordance with city ordinance No. 222, of such dimensions as the committee shall adopt, and that the city engineer be instructed to prepare a plot or plan of the same to report to the Council as required by § 2 of city ordinance No. 222." In pursuance of the foregoing ordinances and resolu-

tion, the street commissioner caused an eighteen inch sewer pipe to be laid on Water street, from Linden to Chestnut streets; also certain branches at the intersection of other streets. This sewer pipe was laid by the city between September 12th and November 20th, 1881; and was the work which gave rise to the present controversy.

The city did not at any time prior to the 20th of November cause the estimates, maps, plans and schedule to be made, which is required to be done by the Act of Assembly, entitled "An Act prescribing the manner in which the councils of cities other than those of the first class may pass ordinances authorizing the grading and paving of avenues, streets or alleys, and the construction of sewers and bridges," approved May 1st, 1876 (P. L. 94); nor were such estimate, maps, plans and schedules attached to any ordinance authorizing the construction of sewers prior to the ordinance of March 15th, 1882, hereinafter set out.

On August 31st, 1881, the City Council appointed assessors to assess the estimated cost and expenses of the sewerage upon the lots and lands in the district. The viewers filed a report, which was subsequently excepted to and set aside. On January 18th, 1882, a new board of assessors was appointed for the same purpose. This board reported on February 25th, 1882, and subsequently the numerous exceptions filed were overruled and the report confirmed.

On March 15th, 1882, ordinance No. 227 was passed and approved by the City Council, which authorized and directed the construction of a complete system of sewerage in the first sewer district. To this ordinance was attached the estimate of the city civil engineer, showing the total cost of this improvement, a map or plan of the property liable to assessment for the cost of the same, the schedule prepared by the board of assessors showing the total cash value of the property liable for assessment for sewerage in district No. 1, and the amount each property would be liable to pay for such improvement. This ordinance, in preliminaries and form, complied with the Act of Assembly of May 1st, 1876.

Under this ordinance, No. 227, the city proceeded to put in a complete system of sewerage in district No. 1, of which the sewer laid in 1881 on Water street, between Linden and Chestnut streets, formed a part. Against the collection of the assessments levied on the property abutting on this last mentioned part of the sewerage the present bill was filed, the complainants contending that it was constructed before any legal ordinance authorizing it was passed.

The defendants claimed before the Master—*first*, that after the construction of that part of the sewer between Linden

and Chestnut streets, and before the balance of the sewer system was constructed, a formal and lawful ordinance, in compliance with the Act of May 1st, 1876, was passed, under which the complainants and all others were lawfully assessed with the cost of their part of the sewer; and *second*, that if the complainants were injured they had a full and adequate remedy at law, by appeal from the assessments to the Court of Common Pleas, and that equity, therefore, had no jurisdiction.

As to these points the Master reported, inter alia, as follows:—

"The authority of the city of Meadville to construct the sewer in question and assess the cost of it upon the abutters and other property owners of sewer district No. 1, of said city, is found in Act of May 1st, 1876, P. L., p. 94, and in § 47 of the Act of May 23d, 1874, as amended by Act of April 11th, 1876; see P. L. 1874, pp. 250, 259 and 260.

"The Act of May 1st, 1876, P. L. 94, expressly provides that 'any ordinance which shall be passed by the Councils of any city in this Commonwealth authorizing . . . . . the construction of any sewer or bridge before the provisions of this Act are complied with shall be null and void and of no effect.' The resolution of August 3d, 1881, authorizing the construction by the city authorities of a sewer along Water street, from Chestnut street to Linden street, in no way complied with the Act of May 1st, 1876, and is therefore, in the language of that Act, 'null and void and of no effect.' No other ordinance was passed authorizing and directing the construction until after that portion of the sewer on Water street, between Chestnut and Linden streets, was built. Can the city impose a special tax upon a limited number of citizens to pay for work done simply under the general powers of the city, and not by virtue of a particular or special ordinance, duly authorized by legislative authority? It is true that a city has power to construct a sewer without any special authority given with that view: Fish *v.* Harrisburg, 2 Grant, 291, but a debt incurred in the construction of a sewer under the general powers of a city would be a general debt of the city, and would have to be paid by general taxation: Com. of Kensington *v.* Keith, 2 Barr, 218, and not by special tax . . . . . . The Master is of the opinion that as that portion of the sewer of sewer district No. 1, situate on Water street, between Chestnut and Linden streets, was constructed before any lawful ordinance was passed to authorize its construction, and before the assessors assessed the estimated expense of it upon the lots and lands in that district, there was no lawful author-

ity either in the city or the assessors to assess the cost of its construction upon the lots and lands of that district.

" Has a court of equity jurisdiction to grant relief in the premises ? The respondents claim not, for the reason: 1st. That the complainants have a full and adequate remedy at law for the wrongs complained of, and 2d. That the complainants have not presented such a case as authorized equitable interference upon any ground. . . . . . The legal remedies which it is alleged exist for the wrongs complained of are an appeal from the assessment to the Court of Common Pleas of the county, or, if the right of appeal did not exist, then a review of the proceedings of the Council on certiorari, or by suit against the collector for illegal seizure of property.

" Reference is made to the 17th section of the Act of April 9th, 1834, entitled, ' An Act to alter the Act incorporating the borough of Meadville ' as giving the right of appeal to the complainants. The Master is of the opinion that the complainants had no right of appeal from the action of the assessors, or City Council assessing this tax, either under the Act of 1834 or under the Act of 1874. The Act of 1834 gives any citizen of the borough the right to appeal from anything done by the borough council ' in pursuance of that Act or of any by-law or ordinance made under the authority of the same.' Nothing complained of here was done in pursuance of that Act, or any by-law or ordinance made under the authority of the same, and no appeal lies by virtue of that Act. No appeal is given under the Act of 1874, and none therefore exists. . . . . . Certiorari is only available where the illegality of the assessment appears upon the face of the proceedings, and where no extrinsic evidence is necessary to show the invalidity of the proceedings : Ewing v. City of St. Louis, 5 Wall., 418 ; Heywood v. City of Buffalo, 4 Kernan, 534. In this case the assessments made which are followed by ordinance No. 227, are perfectly regular upon the face of the proceedings, and the irregularity and illegality of that part of the assessments contested can only be shown by the same extrinsic evidence necessary to sustain this bill; certiorari, therefore, would not have availed the complainants. . . . . . That a court of equity will restrain the collection of an unlawful tax by injunction under proper circumstances is established by a long list of authorities, among others : 2 Dillon on Corp.. § 737 ; St. Clair School Board's Appeal, 74 Pa. St. Rep., 252 ; Miller v. Gorman, 38 Id., 309 ; Borough of Petersburg v. V. Noss, 52 Id., 448 ; Shirk v. Bucher, 53 Id., 94 ; City of Pittsburgh v. Roup, 1 W. N. C., 254 ; O'Donnell v. Strong, Id., 339 ; City of Phila. v. Cochran, 4 Id., 222 ; Matthews v. The City of Scranton, 9 Id., 507 ; Delano Land Co.

et al. *v.* Conners et al., 13 Id., 335. . . . . . In this case the complainants have no remedy at law by which the grievance complained of can be corrected. This court by its decree can prevent a multiplicity of suits, and can also do final and complete justice between all the parties. The Master is therefore of the opinion that the court has complete jurisdiction, and that the relief prayed for should be granted, and hereby recommends that such a decree be made."

Exceptions filed to this report were dismissed by the court and a decree entered, in accordance with its recommendation, perpetually enjoining and restraining the defendants from collecting or attempting to collect any of the municipal assessments or taxes for local sewerage from the owners of lots fronting on Water street, between Chestnut and Linden streets. The defendants took this appeal, assigning for error the overruling of their demurrer to the bill and the entry of the above decree.

*Thomas Roddy* and *W. R. Bole* (with whom were *H. L. Richmond, Jr.*, and *C. W. Tyler*), for appellants.

*J J. Henderson* (with whom was *J. W. Smith*), for appellees.

Chief Justice MERCUR delivered the opinion of the court, October 5th, 1885.

The report of the Master and the opinion of the court are so full and clear that we deem it unnecessary to review the several questions presented in detail or at length. We will therefore refer to a few matters which we think control the case.

Equity is part of the law of this Commonwealth; yet a bill in equity will not lie where there is a complete and adequate remedy at-law. Is there such a remedy given to repair the wrong charged in this case? Here the municipal authorities seek to collect assessments under an ordinance passed in March, 1882, for the construction of a sewer which in fact had been constructed the year before, and for which no valid ordinance then authorized the assessment.

In providing for the construction of sewers in cities of the third class, one of which is represented by the appellants, the 47th section of the Act of 23d May, 1874 (Purd. Dig. 1922, pl. 134), requires an estimate of the costs and expenses of constructing a main sewer, and authorizes the city councils to provide by ordinance for assessing the same upon the lots and lands within the sewer district where "the work is to be done." The freeholders to be appointed shall assess the esti-

mated expense of such sewerage on all the lots and lands in the district where the sewer "is to be constructed or reconstructed." After the assessments are made the council may designate the percentage necessary to pay for such portion of any main sewer as "they shall have determined to construct or reconstruct."

The portions of the section which we have quoted, as well as other parts thereof, show very clearly that all the steps therein specified must precede the construction of the sewer to authorize the assessment of the costs thereof on the adjoining lots. Section 1 of the Act of 1st May, 1876, provides that the councils of cities of this Commonwealth, except cities of the first class, shall not pass any ordinance authorizing the construction inter alia of any sewer before they have caused the city engineer to make an estimate of the total cost of such improvement, particularly stating the items and the cost of each, and also cause a schedule to be made showing the cash value of the property liable to pay for such improvement, and the estimate, map or plan, and schedule, shall be attached to the ordinance before its passage, and shall remain on file in the proper office for the benefit of all persons interested. It further provides that any ordinance which shall be passed by the councils authorizing such work "before the provisions of this Act are complied with shall be null and void and of no effect."

The appellants constructed the portion of the sewer in question before they complied with the requirements of the Act of 1874, or with any other statute authorizing the same. As no statute justified their action, they had no power to pass an ordinance authorizing the imposition of taxes to pay for the sewer previously constructed contrary to express law. An assessment therefor is in the nature of a tax. The right of imposing a tax is an attribute of one of the highest powers of government. To entitle a municipal corporation to recover from the abutter the expense of constructing a local improvement on or in the street, it must comply with all conditions precedent, whether prescribed by Act of Assembly, charter or ordinance: 2 Dill. Municipal Corp., § 811. Conceding an appeal might lie under the statute from the irregular assessment of a tax, yet that is not this case. This tax is not under the statute, but in direct conflict with it.

The ordinance being null and void, equity has jurisdiction to enjoin the officials against the enforcement thereof: Shirk v. Bucher, 3 P. F. S., 94; St. Clair School Board's Appeal, 24 Id., 252; Conner's Appeal, 7 Out., 356.

It is well said in Bisp. Eq., 434, jurisdiction in equity depends not so much on the absence of a common law remedy

as upon its inadequacy. In this case an appeal from the specific tax would have been inadequate to correct the whole evil. All property owners on the street in which the sewer is constructed are interested in the question presented. Equity seeks to prevent unnecessary litigation by disposing in one proceeding of all the questions which arise affecting so many persons. In the present case we think any common law proceeding inadequate to properly settle the rights of all the parties.

We think it unnecessary to answer in detail the authorities cited. We see nothing therein to convict the court of error.

> Decree affirmed and appeal dismissed at the costs of the appellants.