Joseph J. Jermyn v. C. S. Fowler, William Dawson and Christ. Fickus, constituting the Board of the City Assessors of Scranton, and Horatio T. Fellows, James J. Manley, William J. Thomas, John E. Regan and Joseph Oliver, constituting the Board of Revision of Taxes and Appeals for the City of Scranton, and the City of Scranton, Appellants.

*Constitutional law — Taxation — Assessments—Triennial assessments— Annual assessments — Municipalities—Cities of the third class—Act of May 23, 1895.*

That the system prescribed by an act of assembly is liable to abuse in no way affects its validity.

The portion of the fifth section of the Act of May 23, 1895, P. L. 118, which authorizes the board of revision of taxes and appeals in cities of the third class to cause an assessment of property to be made other than in triennial years, is not unconstitutional, either as being an illegal delegation of legislative power or as involving local legislation in violation of section 7 of article 3, of the constitution of Pennsylvania.

Where valuations of property in a city of the third class are made by a so-called assistant assessor, and are reported by him to the board of assessors which adopts the same, they become the valuations of the board, and the assessments are not rendered illegal by the fact that the assistant assessor is not a legal officer.

Argued Feb. 24, 1898. Appeal, No. 478, Jan. T., 1898, by plaintiff, from decree of C. P. Lackawanna Co., May T., 1897, No. 5, on bill of equity. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Reversed.

Demurrer to bill in equity for an injunction to restrain the collection of taxes.

ARCHBALD, P. J., entered the following decree :

And now, August 19, 1897, this case coming on to be heard upon demurrer to the plaintiff's bill of complaint, upon due consideration thereof it is adjudged that the said demurrer be overruled and the bill sustained, and that judgment be given thereon in favor of the plaintiff ; and the court do thereupon further order, adjudge and decree that the amendment to the fifth sec-

tion of article 15 of the act of assembly of May 23, 1889, said
amendment having been approved May 23, 1895, so far as
it attempts to authorize the board of revision of taxes in cities
of the third class " in any year other than a triennial year if they
shall deem a new assessment necessary " to issue their precept
to the city assessors requiring them to make out and return a
full, just and equal assessment of property within the city, or
such parts thereof as the said board of revision may deem ad-
visable, is unconstitutional and void; and the assessment of the
plaintiff's real property in the eighth ward of the city of Scran-
ton, for the year 1897, complained of in the bill, having been
made by virtue of the said amendment, is likewise unconstitu-
tional so far as it attempts to change the valuations of such
property from those fixed by the triennial assessment thereof
made in the year 1895, there having been no change in the con-
dition of the improvements of the said property since that time;
and thereupon an injunction is awarded perpetually enjoining and
restraining the defendants or either of them from levying, collect-
ing or enforcing from the plaintiff or his property any taxes
upon the said unlawful assessment; that is to say, on the excess
of valuation of said property over and above or otherwise than
that fixed by the said triennial assessment of the year 1895;
and the city of Scranton is ordered to pay the costs.

*Error assigned* among others was decree of the court.

*M. A. McGinley*, city solicitor, and *James H. Torrey*, for ap-
pellants.—Legislative enactments must violate some prohibition
of the constitution of the state or of the United States, declared
or clearly implied, before they can be pronounced unconstitu-
tional: Butler's App., 73 Pa. 448.    That the system prescribed
by the act is liable to abuse in no way affects its validity: Bruce
v. Pittsburg, 166 Pa. 152.

The regulation of such local affairs as are commonly left to
local boards and officers is not understood to belong properly
to the state; and when it interferes, as sometimes it must,
to restrain and control the local action, there should be reasons
of state policy or dangers of local abuse to warrant the interpo-
sition: Cooley on Constitutional Limitations (5th ed.), p. 228 ·
Beach on Public Corporations, secs. 55, 59, 60.

The municipal government is but a branch of the government of the state; and whatever powers of taxation the legislature possess it may lawfully grant or delegate to such bodies: Durach's App., 62 Pa. 494.

The fact that it may authorize the laying of a municipal tax which may be burdensome in its character does not make it unconstitutional: Penna. R. R. v. Pittsburg, 104 Pa. 522; Burroughs on Taxation, 128; Cooley on Taxation, 288; Greenough v. Fulton Coal Co., 74 Pa. 500.

There was a proper delegation of authority to the municipality: Moers v. Reading, 21 Pa. 202; Locke's App., 72 Pa. 496.

*I. H. Burns*, for appellee.—The valuation of plaintiff's property for taxable purposes was made by a so-called assistant assessor, who was not a legal officer, for the reason that in the year when the assessment was made no such office existed: Birch v. Fisher, 13 S. & R. 209; Woodman v. Auditor General, 52 Mich. 30.

The act is an unlawful delegation of power: Cooley on Constitutional Limitations, *116; Barto v. Himrod, 8 N. Y. 483; State v. Young, 29 Minn. 474; Ex parte Wall, 48 Cal. 315; People v. Collins, 3 Mich. 343.

The provision of the act in question is obnoxious to sec. 7 of art. 3, of the constitution, in that it attempts to regulate the affairs of a city by a local law, and also to sec. 1 of art. 9, which provides that all taxes shall be levied and collected under general laws: Scranton v. Silkman, 113 Pa. 199; Frost v. Cherry, 122 Pa. 417; Ruan Street, 132 Pa. 275.

OPINION BY MR. JUSTICE GREEN, July 21, 1898:

The plaintiff, being an owner of real estate in the city of Scranton, complains that the assessed valuation of his property has been changed and increased in a year between two periods of triennial assessment. The defendants reply that the change was made by the board of city assessors in obedience to a precept of the board of revision of taxes and appeals. The plaintiff in his bill alleges that the year 1895 was the last preceding triennial assessment year, and that under that assessment his property was assessed at $11,000, and in the year 1897 the city board of assessors made another assessment of the same prop-

erty by which the valuation was increased to $14,800. The bill, further alleging that the next triennial assessment year was the year 1898, avers upon information and belief that the increase of the assessed valuation was made under the authority of the fifth section of the act of May 23, 1895, by virtue of a precept from the board of revision of taxes and appeals to the city assessors, in pursuance of the authority conferred by the act of 1895. The bill further avers that the assessment made by the city assessors in 1897 was illegal and void, because the act of 1895, is unconstitutional, for various reasons stated in the bill. The defendants demurred to the bill on the ground that it sets forth no facts which entitle the plaintiff to the relief prayed for, either at law or in equity.

The question raised on these pleadings is whether the fifth section of the Act of May 23, 1895, P. L. 119, is unconstitutional. The section is a very long one, but as only that part of it which authorizes the board of revision of taxes and appeals to cause an assessment of property to be made in other than triennial years is impeached as being contrary to the constitution, that part only will need consideration. The first clause of the section directs the election of five resident citizens of cities of the third class, who shall constitute a board of revision of taxes and appeals, once in every three years. The next clause is in the following words: " Said board, a majority of whom shall constitute a quorum, may in any year other than a triennial year, if they shall deem a new assessment necessary, on or before the first day of September, issue their precept to the city assessors, requiring them to make out and return a full, just and equal assessment of property within the city, or such parts thereof, as the said board of revision may deem advisable, and they shall take and receive the triennial and yearly assessments as returned by the board of city assessors, and shall have power and authority to revise, equalize or alter such assessments in any and every year, by increasing or reducing the valuations, either in individual cases or by wards or parts of wards, and to add to the assessment books, and to the duplicates thereof in the hands of the city treasurer, any subject of taxation omitted therefrom," etc. The remainder of the section makes provision for the methods of proceeding, and for appeals and other matters not important to the present contention.

The particular provision of the section which is claimed to be contrary to the constitution, and upon which the learned court below so decided, is one which authorizes assessments of property to be made in the years other than the triennial years. The point upon which the ruling was made in the court below seems to be that the making of the intermediate assessments was left to the discretion of the board of revision, which it was contended was a delegation of legislative power, and necessarily tended to produce discrimination and uncertainty in the system in different cities, so that in one city there might be no intermediate assessment, in others there might be annual assessments, and all depending upon the mere discretion of the board of revision. The argument was that there should be but one system, and that, a triennial assessment only, prevailing in all cities alike. The contention that there might be an abuse of the discretion thus conferred upon the board of revision is without force. The question is rather as to the validity of a system which confers a discretion. If the system is valid, its abuse in particular cases cannot affect its validity. We said this much in Bruce v. Pittsburg, 166 Pa. 152, where our Brother DEAN, in delivering the opinion said : " That the system prescribed by the act is liable to abuse in no way affects its validity."

Recurring to the general subject, it is certainly difficult to discover any provision of the constitution which is impinged by this enactment. None is pointed out in the opinion of the court below, but the contention seems to be expressed in the following words: " The one thing lacking is the criterion by which the necessity for a new assessment is to be judged ; this is vital, and should appear by the law itself. The legislature do not say that under such and such circumstances, if the board of revision deem it necessary, a new assessment may be ordered, but that upon the mere say so of the board, without other let or hindrance, this may be done. This is not the ordinary creation of a municipal function, the employment or non employment of which is left to the discretion of the persons invested therewith. With such as that we have no controversy. It is, on the contrary, the unlimited delegation to the person who is to exercise the function in question of the power to say under what circumstances that function shall exist." It seems to us that, conceding this to be a legitimate argument against the

wisdom or expediency of the legislation, it cannot reach the dignity of a constitutional objection. The act of 1895 was an amendment of the Act of May 23, 1889, P. L. 277, which itself created a board of assessors with power to exercise the same, or a very similar function, and was clothed also with the power to " revise, alter and equalize the said assessments (triennial), . . . . and to so far modify such assessments during the years succeeding the year of the triennial assessment, as the changes of ownership or the condition of the improvements thereon shall require."

While the fifth section of the act of 1895 created a board of revision of taxes and appeals with the powers specially designated therein, it was only an amendment to the fifth section of the act of 1889, which created a similar board called " a board of appeals," with power to hear and determine all appeals from assessments, and whose decision was made final, while from the decisions of the board of revision created by the act of 1895, an appeal was given to the court of common pleas. By the act of 1889, a triennial assessment was provided for, with power to the board of assessors to alter, equalize and modify the assessments during the intermediate years, for certain enumerated purposes. By the fifth section of that act a board of appeals was created with power to hear and finally determine all appeals from the board of assessors. By the third section of the act of 1895, amending the third section of the act of 1889, the board of assessors was directed to make a triennial assessment, and report a list of all properties exempt from taxation. And they were also required during the years succeeding the triennial year, upon the precept of the board of revision, to make out and return an assessment as directed by the precept. By the fifth section of the act of 1895 the board of revision and appeals was authorized to issue a precept during the intervening years, if they deemed it necessary, to the board of assessors, requiring them to make another assessment of all property, and then the board of revision was required to take both the triennial and annual assessments and " revise, equalize or alter such assessments in any and every year by increasing or reducing the valuation."

As we understand, the plaintiff's contention is, that this authorization to make intermediate annual assessments, if the

board of revision deemed it advisable, is illegal and void, because it is in contravention of the constitution. The learned counsel for the appellee contends that the judgment of the court below can be sustained on three grounds. The first of them is that the valuation of the plaintiff's property was made by a so-called assistant assessor, but who was not a legal officer, for the reason that the year when the assessment was made no such office existed. The averment contained in the seventh clause in the bill is referred to as authority for this contention. But the fifth clause of the bill asserts that the board of assessors of the city of Scranton made the increased assessment, and it is therefore their act, no matter who reported the valuations to them. If they adopted them they assumed all the responsibility for the action taken, and it is their action that is under consideration. The second reason alleged for sustaining the action of the court is that the plaintiff's real estate was changed in a year other than the triennial year, under color of an unlawful delegation of legislative power. This contention raises the whole question of the unlawful authority. The argument must suffice to prove that the delegation of the particular authority to make an assessment in a year other than the triennial year is unlawful. If it does not establish that proposition it is of no avail. Now it is not at all denied for the appellee that the entire taxing power of the commonwealth must be exercised by the legislature. Nor is it at all denied that the legislative power to impose taxation in the municipalities of the commonwealth may lawfully be committed to the municipal authorities. The decisions on this subject are absolutely without qualification. Thus in Durach's Appeal, 62 Pa. 494, it was said by SHARSWOOD, J.: "The municipal government is but a branch of the government of the state, and whatever powers of taxation the legislature possess they may lawfully grant or delegate to such bodies." In Butler's Appeal, 73 Pa. 448, we said: "Whatever power of taxation the legislature possesses, it may delegate to a municipal government, to be legitimately exercised within its corporate limits." In Pa. R. R. Co. v. Pittsburg, 104 Pa. 522, MERCUR, C. J., said: "The taxing power in this commonwealth is vested absolutely in the legislature, and when not prohibited by the constitution, it is limited in the exercise of that power by its discretion only. . . . Whatever power it possesses it may

delegate to a municipal government to be legitimately exer-
cised within its corporate limits."

These propositions being incontrovertible, it will be seen at
once that the question at issue is narrowed down to this: Can
the legislature authorize the proper municipal officers of a city
of the third class to make assessments in other years than the
triennial years? There can certainly be no constitutional ob-
jection to the creation of a board of revision and appeals with
all the powers incident to the functions of such a board. No
such objection is made in the present case, and if it were, it
could not be entertained for a moment. It is equally certain
that all assessments of property that are made in any such city
should be made by the board of assessors. There being no
valid objection to the official character of the persons who are
to exercise the function, there remains only the single and very
narrow question, is it unconstitutional for the legislature to
authorize any assessments in the years between the triennial
years? The argument presented in the opinion of the court
below has been already considered. In the argument of the
counsel for the appellee, in addition to the contention that the
legislation in question is an unlawful delegation of power,
which has already been answered, a point is made that the case
of O'Neil v. Insurance Co., 166 Pa. 72, rules the question in
favor of the plaintiff. An examination of that case shows that
the question there raised and decided has no analogy to the
question we are now considering. It was an attempt to dele-
gate to a single individual person the power to prescribe a com-
pulsory form of contract between private parties. The whole
subject was committed to the official without any kind of limi-
tation or restraint, and without responsibility to any super-
vising agency. In other words, it rested only with the official
designated, to say what kind of contract should be made, and it
conferred upon him the whole power of the commonwealth to
enforce the terms that he should prescribe. It is a grave ques-
tion whether the legislature itself possesses any such power,
but, if it does, it is most manifest that only the lawmaking
power itself can exercise it, for it is the making of law; it is
the very creation of a legal status. But here the authority
conferred is nothing but a matter of detail; it does not involve
the power itself. It is simply a question whether the annual

assessments may be made, in addition to the triennial assessments, when circumstances seem to require such annual assessments. It is impossible to conceive why this may not be done. In point of fact, annual assessments are always made, though, as a rule, the valuations as made in the triennial assessments are followed. But it is quite possible, for many reasons, that facts may transpire after the completion of the triennial assessments which may require changes to be made. This was recognized under the old law in the cases of change of ownership or the condition of the improvements, and the new law simply enlarges the field of possibilities that may demand a change. It cannot be that a mere enlargement of the occasions for the exercise of the power to make changes is fundamentally illegal, when the power to make some changes is conceded, or cannot be impeached.

We are very clear that such enlargement is not a delegation of legislative power, but a mere addition to powers already lawfully conferred. In this connection the following citation from the opinion of Chief Justice BLACK, in the case of Moers v. City of Reading, 21 Pa. 188, is quite apposite, viz: "Half the statutes on our books are in the alternative, depending on the discretion of some person or persons to whom is confided the duty of determining whether the proper occasion exists for executing them. But it cannot be said that the exercise of such a discretion is the making of the law."

Some contention is also made in the argument for the appellee that this change in the law makes it local, and therefore in violation of section 7 of article 3 of the constitution. We are obliged to say that the argument in support of this contention does not convince us. It is urged that one city may have triennial assessments only and another city might have a new assessment every year. The answer is that if the circumstances that required an annual assessment were present in one city and not present in another, there would be no occasion for a change in the latter while the reason for a change in the former might be most urgent and potential. But this difference is not radical or fundamental to the existence of the power, it relates only to the difference in the existing conditions in the different cities. The very same argument might be applied with equal force in the case of changes of ownership or in the condition of

the improvements. In one city where population was rapidly growing, and new business enterprises constantly developing, such changes would be frequent and would necessarily require frequent changes in the assessed valuations, while in another city, where both the population and business were at a standstill, no such changes would be required. Yet surely these differences would afford no valid argument against the legality of a statute which recognized their possibility and made corresponding provision for them. Upon the whole case we are of opinion that the legislation in question is lawful class legislation, and is not local in its character, and therefore is not prohibited by the constitution. The assignments of error are all sustained.

The decree of the court below is reversed, the demurrer of the defendants is sustained, and the plaintiff's bill is dismissed with costs.