328 A.2d 819
BOROUGH OF GREEN TREE et al., Appellants,

v.

The BOARD OF PROPERTY ASSESSMENTS, APPEALS
AND REVIEW OF ALLEGHENY COUNTY,
Pennsylvania, et al., Appellees.

Appeal of BOROUGH OF CRAFTON at No. 142.

Appeal of BOROUGH OF BRENTWOOD at No. 159.

Supreme Court of Pennsylvania.
Argued Sept. 28, 1973.
Decided Nov. 20, 1974.

Donald J. Lee, Dougherty, Larrimer & Lee, Pittsburgh, for appellant at No. 141.

Gilbert E. Morcroft, Pittsburgh, for appellant at No. 142.

William G. Boyle, Meyer, Unkovic & Scott, Pittsburgh, for appellant at No. 159.

Francis A. Barry, County Solicitor, Thomas M. Rutter, Jr., Asst. County Solicitor, Pittsburgh, John F. Murphy, William R. Caroselli, Asst. County Solicitors, Pittsburgh, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

POMEROY, Justice.

On February 13, 1970, the Borough of Greentree and a number of individual residents of that borough who owned land and paid Allegheny County real property taxes filed a complaint in equity against the Allegheny County Board of Property Assessment, Appeals and Review (herein the "Board") and the three Commissioners of Allegheny County, challenging the constitutionality of certain sections of the Second Class County Assessment Law, Act of June 21, 1939, P.L. 626, as amended, 72 P.S. § 5452.1 et seq. Section 7 of that statute, 72 P.S. § 5452.7, provides that the Board of Property Assessment, Appeals and Review may—

"divide the county into three districts, as nearly equal as possible in subjects of taxation, and may provide that triennial assessments shall be made each year, but for only one of such three districts during any one year. In order to inaugurate such system, a triennial assessment may be made for the first district during the year immediately following one [year] in which a triennial assessment was made for the county as a whole, and a triennial assessment may be made for the second district during the second year following one in which a triennial assessment was made for the county as a whole."

In 1969 the Board undertook to assess all property in the Southern Triennial District for the tax years 1970–1972, utilizing 50% as the uniform common ratio of assessed value to fair market value.[1] Property in the other two triennial districts was not scheduled for reassessment until 1970 (for the 1971–1973 triennium) and 1971 (for the 1972–1974 triennium) respectively. Plaintiffs in their complaint made a two-pronged attack on the 1969 reassessment of the Southern District. They claimed first that section 7 of the Second Class County Assessment Law, 72 P.S. § 5452.7, which authorizes the division of Allegheny County into triennial districts, is itself unconstitutional. Secondly, they claimed that the uniform common ratio of 50% was being applied initially to the Southern District only, while the two remaining triennial districts were permitted to remain at some lower, unspecified ratio. Under either challenge, plaintiffs claimed that they were being subjected to violation of the uniformity clause of the Pennsylvania Constitution, Art. VIII, § 1, P.S.,[2] and of the Equal Protection Clause of the Constitution of the United States. Fifteen additional boroughs and townships located in the Southern Triennial District intervened.

The defendant Board and County Commissioners filed a responsive pleading on the merits in which they asserted that section 7 of the Second Class County Assessment Law was not unconstitutional and that the uniform common ratio of 50% had not been applied to the Southern

1. For a review of the relationship between the uniform common ratio and the law of real property assessment, see May Department Stores Company v. Allegheny County Board of Property Assessment, Appeals and Review, 441 Pa. 556, 272 A.2d 862 (1971); Massachusetts Mutual Life Ins. Co. Tax Assessment Case, 426 Pa. 566, 235 A.2d 790 (1967) (and cases following in volume 426 Pennsylvania State Reports); Deitch Company v. Board of Property Assessment, 417 Pa. 213, 209 A.2d 397 (1965) (and cases following in volume 417 Pennsylvania State Reports).

2. "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."

District in 1969 alone, but rather had been in general use in Allegheny County for a number of years.[3]

The Court of Common Pleas of Allegheny County noted that a serious question existed as to the jurisdiction of that court to adjudicate the plaintiffs' action in view of the existence of a statutory appeal procedure appearing in the Second Class County Assessment Law, 72 P.S. §§ 5452.11, 5452.12 (Supp.1974–75), and that it was the obligation of the court to raise and decide the jurisdictional question *sua sponte.*[4] The lower court therefore ordered briefs and arguments directed to the question, following which it dismissed the complaint on the ground that there existed a statutory remedy and that the remedy was adequate.

Six of the municipality-plaintiffs and six of the individual taxpayer-plaintiffs took an appeal to this Court from the dismissal of their equity complaint. We transferred the appeal to the Commonwealth Court, *Borough of Greentree v. Board of Property Assessment,* 446 Pa. 309, 285 A.2d 165 (1971). That court affirmed the dismissal unanimously and adopted the opinion written by the Court of Common Pleas of Allegheny County (Olbum, J.). Allegheny County, Southern District, Tax Assessment Appeals, 7 Pa.Commonwealth Ct. 291, 298 A.

---

**3.** Although we do not intend to indicate any knowledge of the truth of the defendants' assertion, we note that in our most recent Allegheny County real property tax assessment decision the following observation was made:

"No ruling of our court exists for the 1965–1967 triennium in Allegheny County. The trial court was entirely correct in taking judicial notice of a common level ratio for the taxing district, *and neither party seriously contests the finding that the applicable ratio is 50% throughout the district.*"

*May Department Stores Co. v. Allegheny County Board of Property Assessment,* 441 Pa. 556, 564, 272 A.2d 862 (1971) (emphasis supplied).

**4.** Cf. Pa.R.C.P. 1509(b), 12 P.S.Appendix:

"The objections of . . . failure . . . to exhaust a statutory remedy may be raised by preliminary objection, answer or reply *but [is] not waived if not pleaded.*" (Emphasis added).

2d 643 (1972). Three of the municipalities (Greentree, Crafton and Brentwood) and two of the individual taxpayers (Frank and Charlotte Beitel) petitioned this Court for allocatur, which we granted.

The appellees contend that equity was without jurisdiction in this case because of our holding in *Rochester & Pittsburgh Coal Company v. Indiana County Board of Assessment & Revision of Taxes*, 438 Pa. 506, 266 A.2d 78 (1970) (*"Rochester"*). The courts below likewise considered *Rochester* to be controlling. Appellants, on the other hand, rely primarily on our earlier decision in *Lynch v. Owen J. Roberts School District*, 430 Pa. 461, 244 A.2d 1 (1968) (*"Lynch"*) for the contrary proposition that equity does have jurisdiction.

In the latter case, *Lynch*, we held, speaking through Mr. Justice Roberts, that—

> "[w]hile we agree with the general proposition that equity will not entertain an action where plaintiff has an adequate statutory remedy at law, we also acknowledge the presence of an exception to that doctrine, existing where a taxing statute is made the subject of a *constitutional* challenge."

*Id.* at 465, 244 A.2d at 3 (emphasis in original).[5] Two years later, however, in the *Rochester* decision, this Court (speaking through Mr. Justice Cohen, who had dissented in *Lynch*) stated the law of equitable jurisdiction over cases raising constitutional questions as follows:

> [W]hat is required to confer jurisdiction on an equity court is the existence of a substantial question of constitutionality (and not a mere allegation) *and the absence of an adequate statutory remedy.*

438 Pa. at 508, 266 A.2d at 79 (emphasis supplied). The important italicized qualification in *Rochester*—"the

---

5. Mr. Justice Cohen dissented in *Lynch*, citing his earlier dissenting opinion in *Studio Theatres, Inc. v. Washington*, 418 Pa. 73, 80, 209 A.2d 802 (1965).

absence of an adequate statutory remedy"—is not part of the *Lynch* formulation in a case where a constitutional challenge is made.

Although the Court on two occasions prior to the instant case has sought to reconcile *Lynch* with *Rochester, see Crosson v. Downingtown Area School District,* 440 Pa. 468, 473–474, 270 A.2d 377 (1970); *Campbell v. Coatesville Area School District,* 440 Pa. 496, 499–500, 270 A.2d 385 (1970), we would be less than candid were we not to acknowledge that tension exists between the two opinions. Our task in these appeals is to attempt a further resolution of that tension and the consequent confusion that has developed.

The view expressed in *Lynch* is, as above indicated, that the presence of a constitutional question in an equity action challenging a taxing or other regulatory statute *always* grounds jurisdiction in the court to adjudicate, regardless of the presence of a legislatively-prescribed route of appeal, however adequate that may be.[6]

There is language in our decisions which supports this view. In *Y.M.C.A. v. Reading,* 402 Pa. 592, 167 A.2d 469 (1961), for example, Mr. Justice Cohen (a dissenter in *Lynch*) carefully reviewed the history of equity jurisdiction where the legislature has provided a statutory appeal route:

> "[I]n *Jacobs v. Fetzer* [381 Pa. 262, 112 A.2d 356 (1955)], the court recognized the first-stated rule [that 'a statutory remedy must be pursued, if one exists, in preference to any other proceeding'] by quoting from the *Dougherty case* [*v. Philadelphia,* 314 Pa. 298, 171 A. 583 (1934)] to the effect that equity has jurisdiction where a total want of power to tax ap-

6. The *Lynch* concept is most recently stated in a footnote in the opinion of Mr. Justice Roberts, expressing the views of three members of the Court, in *Alco Parking Corp. v. City of Pittsburgh,* 453 Pa. 245, 252 n. 2, 307 A.2d 851 (1973), rev'd., 417 U.S. 369, 94 S.Ct. 2291, 41 L.Ed.2d 132 (1974).

pears. Hence, it does not seem inappropriate to review the history of this dichotomy to discover if equity jurisdiction should properly attach in a case like the present one *where no allegations that the statute is unconstitutional on its face or is being applied unconstitutionally are made . . .*" 402 Pa. at 596, 167 A. 2d at 471 (emphasis supplied).

The Court in *Y.M.C.A.* held equity powerless to adjudicate "absent a challenge to the constitutionality of a statute or of official action thereunder." *Ibid.*, at 598, 167 A.2d at 472. *See also Studio Theatres, Inc. v. Washington,* 418 Pa. 73, 79, 209 A.2d 802, 805 (1965) ("The teaching of our case law is that, where the controversy involves a challenge to the constitutional validity of a taxing statute or ordinance, such a controversy falls within the general class of cases wherein equity does have jurisdiction and competency to act") ; *Philadelphia Life Insurance Co. v. Commonwealth,* 410 Pa. 571, 578, 190 A.2d 111, 115 (1963) (" 'It is too well settled for argument that equity will enjoin taxation for want of power to tax' ").

■ The contrary position, which has generally prevailed in this Court, is also well-supported in the case law. We are of the view, as expressed in *Rochester,* that the mere fact that a constitutional question is raised as to the validity of a statute does not, without more, vest jurisdiction in a court of equity to adjudicate. The additional element required to confer equitable jurisdiction is either the absence of a statutorily-prescribed remedy or, if such a remedy exists, then a showing of its inadequacy in the circumstances.

■■ We must begin with recognition of the fact that courts of equity (or more precisely, the equitable jurisdiction of our courts of common pleas) are subject to statutory limitations, as indeed are the legal powers of

our lower courts.[7]   At an early date, the General Assembly made it clear that statutorily-prescribed remedies were to be "strictly pursued."   In the Act of March 21, 1806, P.L. 558, 4 Sm.L. 326, § 13, 46 P.S. § 156,[8] the General Assembly provided:

> "In all cases where a remedy is provided, or duty enjoined, or anything directed to be done by any act or acts of assembly of this commonwealth, *the directions of the said acts shall be strictly pursued,* and no penalty shall be inflicted, or anything done agreeably to the provisions of the common law, in such cases, further than shall be necessary for carrying such act or acts in effect."   (emphasis supplied).

An argument to the effect that a court of equity must *always* entertain a constitutional attack on a taxing statute (or some other similar enactment) without regard for the adequacy of the legislatively-prescribed remedy is, essentially, an argument that the above statute should be ignored; that is to say, that the legislature is without power to channel questions of a constitutional nature into a specified route of appeal.   We cannot subscribe to such a result.   Constitutional questions, like all others, can and are legitimately channeled by the legislature in their passage through the judicial process.   *See, e. g., Ellis v. Dixon,* 349 U.S. 458, 462 n. 5, 75 S.Ct. 850, 99 L.Ed. 1231 (1955); *Parker v. Illinois,* 333 U.S. 571, 68 S.Ct. 708, 92 L.Ed. 886 (1948); *Central Union Tel. Co. v. Edwardsville,* 269 U.S. 190, 46 S.Ct. 90, 70 L.Ed. 229

---

7.   Pa.Const. Art. V, § 5: "There shall be one court of common pleas for each judicial district   .   .   .   (b) having unlimited original jurisdiction in all cases except as may otherwise be provided by law."   (emphasis supplied).

  The power of the General Assembly to control the chancery powers of the courts of common pleas was reserved in the Pennsylvania Constitution of 1874, Article V, § 20.

8.   The Act of 1806 was recently repealed by the Act of December 6, 1972, Act 290, § 4, and was simultaneously reenacted in substantially the same language.   Statutory Construction Act of 1972, 1 Pa. S. § 1504.

(1925).[9] See also Pa.R.Crim.P. 323(a), 19 P.S. Appendix, (applications to suppress unconstitutionally-seized evidence must be made not later than ten days before the beginning of trial session "[u]nless the opportunity did not previously exist, or the interests of justice otherwise require.")

The approach customarily taken by this Court in the past, when faced with a question such as the one before us today, has been to require litigants to conform with the desires of the legislature by following the statutorily-prescribed route of appeal. We have, however, at the same time recognized that the above rule is not to be unthinkingly applied, but rather that exception will be made where the statutory remedy is pointless or inadequate. *Rochester, supra; Studio Theatres, Inc. v. City of Pittsburgh, supra,* 418 Pa. at 79, 209 A.2d at 805–806 ("Whether a court of equity, having such jurisdiction to act, should act in view of the presence of an adequate remedy at law or for some other valid reason is another matter altogether"); *Bliss Excavating Co. v. Luzerne County,* 418 Pa. 446, 451, 211 A.2d 532, 535 (1965) ("The statutory procedure need not be followed only if is inadequate to the task of resolving plaintiffs' objections or its pursuit will cause them irreparable harm"); *Pennsylvania Life Ins. Co. v. Pennsylvania National Life Ins. Co.,* 417 Pa. 168, 173, 208 A.2d 780, 783 (1965) ("Equity will afford relief if the statutory remedy is inadequate or its pursuit would work irreparable harm"); *Philadelphia Life Ins. Co. v. Commonwealth,* 410 Pa. 571, 580, 581, 190 A.2d 111, 116 (1963) ("the remedy must be adequate and complete"; it is not adequate "Where a challenge is made not to the mechanics of tax calculations but to the power of the legislature to levy any tax

**9.** All of the United States Supreme Court cases cited in the text above stand for the proposition that the failure to raise a federal constitutional question in the manner provided by state law precludes review of the question in the United States Supreme Court.

. . ."; *Y.M.C.A. v. Reading*, 402 Pa. 592, 595, 167 A.2d 469, 471 (1961) ("The efficacy of the rule that a statutory remedy must be pursued, if one exists, is hardly questionable"). Our approach has been, in effect, a flexible one, such as that advocated by Prof. Jaffe: "Where the administrative process has nothing to contribute to the decision of the issue and there are no special reasons for postponing its immediate decision, exhaustion should not be required." L. Jaffe, Judicial Control of Administrative Action 440 (1965).[10]

From what has been said, it is clear that we have not dispensed with the requirement that a litigant follow statutorily-prescribed remedies merely because a constitutional question is present in the case.

It remains to determine whether the statutorily-prescribed remedy in this case, (a remedy which appellants have lost beyond recall by failure to file appeals with the appellee Board within the required period after their 1969 reassessments) is such an adequate remedy as to

---

10. Prof. Jaffe, writing in 1965, found the case law of the United States Supreme Court inconclusive on the question of whether the presence of a constitutional issue alters the requirement that administrative remedies be first exhausted. Subsequently the Supreme Court decided *W. E. B. DuBois Clubs of America v. Clark*, 389 U.S. 309, 88 S.Ct. 450, 19 L.Ed.2d 546 (1967). The DuBois Clubs had attempted to circumvent an administrative proceeding before the Subversive Activities Control Board by bringing an action in a federal district court for injunctive relief, alleging that the statute under which the Attorney General sought to proceed was unconstitutional. The Court in a *per curiam* opinion held (7–2) the district court powerless to proceed, notwithstanding the alleged facial unconstitutionality of the statute:

"It is evident that Congress has provided a way for appellants to raise their constitutional claims. But appellants, denying that they are within the coverage of the Act, wish to litigate these claims in the District Court. The effect would be that important and difficult constitutional issues would be decided devoid of factual context and before it was clear that appellants were covered by the Act. . . . [T]he District Court should not be forced to decide these constitutional questions in a vacuum." 389 U.S. at 311–312, 88 S.Ct. at 452, 19 L.Ed.2d at 549 (emphasis supplied).

preclude equity from taking jurisdiction over their complaint.

Appellees argue forcefully that our opinion in *Rochester* is dispositive of this question as well. In the *Rochester* case the Board of Assessment, according to the complaint there, had undertaken, in the absence of statutory authority such as that found in section 7 of the Second Class County Assessment Law,[11] to reassess property in nine of the County's thirty-eight political subdivisions. The Rochester & Pittsburgh Coal Co. brought an action in equity, alleging, as did appellants here, that the taxing procedures of the County deprived it of equal protection and denied it uniformity of taxation. We observe that "[i]n the real estate tax area most of the grave constitutional questions have already been decided, and most of the actions, including this one, question not the underlying statute but rather its application." 438 Pa. at 509, 266 A.2d at 79. While that may have been the situation in *Rochester*,[12] we are convinced it is not the situation here.

Appellants have made here a frontal attack on the constitutionality of section 7 of the Second Class County Assessment Law, 72 P.S. § 5452.7, alleging that the statute authorizes the division of Allegheny County into three triennial districts (it plainly does), and that such a division violates the Pennsylvania and U. S. Constitutions.

11. The Second Class County Assessment Law, at issue here, is the only county assessment law which authorizes the division of a county into triennial assessment districts.

12. We note, in retrospect, that the General County Assessment Law, Act of May 22, 1933, P.L. 853, § 1 et seq., 72 P.S. § 5020–1 et seq., contained a provision which purported to authorize inter-triennial assessments "at such time as the board may prescribe." 72 P.S. § 5020–431. The constitutionality of the procedure utilized in Indiana County (inter-triennial assessment) had already been long since affirmed by this Court. *Jermyn v. City of Scranton*, 186 Pa. 595, 40 A. 972 (1898). Therefore, *Rochester* was indeed a case raising one of those constitutional challenges in the real estate tax field "already . . . decided." *Rochester*, 438 Pa. at 509, 266 A.2d at 79.

■■ Our opinions in the past have generally shown an awareness that the more direct the attack on the statute, the more likely it is that exercise of equitable jurisdiction will not damage the role of the administrative agency charged with enforcement of the act, nor require, for informed adjudication, the factual fabric which might develop at the agency level. The reason, we believe, is that the determination of the constitutionality of enabling legislation is not a function of the administrative agencies thus enabled. *See Philadelphia Life Ins. Co. v. Commonwealth,* 410 Pa. 571, 580, 190 A.2d 111 (1963). The more clearly it appears that the question raised goes directly to the validity of the statute the less need exists for the agency involved to throw light on the issue through exercise of its specialized fact-finding function or application of its administrative expertise. Further, the less need there is for compliance with an agency's procedures as a prerequisite to informed constitutional decision making, then correspondingly greater is the embarrassment caused to litigants by requiring conformity with the statutorily-prescribed remedy. We conclude that the case at bar is such a case. Here the specialized proceedings before the appellee Board would be of little, if any, utility in determining the constitutionality of section 7 of the Second Class County Assessment Law. Whatever benefit might be derived from the filing of individual appeals by these appellants with the Board would be far outweighed by the inconvenience, delay and expense involved. We hold, therefore, that in the circumstances of this case, the statutory remedy was not adequate. This holding, coupled with our basic finding of the presence of a substantial question of constitutionality going directly to the validity of the assessment scheme applicable to Allegheny County [13] requires that

13. So far as we are aware, our case law provides no direct answer to the question of constitutionality of triennial assessment districts within a county. The appellees have cited us to no case more directly on point than *Jermyn v. City of Scranton,* 186 Pa.

we reverse and remand for further proceedings.[14]

On remand the court should also adjudicate appellants' claim that the Board applied a new uniform assessment ratio of 50% to their triennial district alone. While this issue is posed in statutory terms it may have constitutional overtones. In any event, once equity properly has jurisdiction, it may, in the interest of avoiding multiplicity of actions, dispose of all issues in the suit. *Wortex Mills, Inc. v. Textile Workers Union of America,* 380 Pa. 3, 11–14, 109 A.2d 815 (1954); *Hurst v. Brennen* (No. 1), 239 Pa. 216, 223, 86 A. 778 (1913). *See* 1 J. Pomeroy, Equity Jurisprudence, § 231 (5th Ed., 1941). *See also Pennsylvania State Chamber of Commerce v. Torquato,* 386 Pa. 306, 328–330, 125 A.2d 755 (1956); *Harper's Appeal,* 109 Pa. 9, 15, 16, 1 A. 791 (1885).[15]

The orders of the Commonwealth Court and of the court of common pleas are reversed, and the case is re-

595, 40 A. 972 (1898) (see note 12 *supra*). While that case is of some persuasive authority in appellees' favor, it hardly controls the question presented, nor does it cut enough against appellants' contention to justify our saying that the constitutional issue is not substantial.

We also note that the General Assembly appears to be of the opinion that the constitutional question here is substantial. In 1965 it amended 72 P.S. § 5452.7 to add the following sentence: ". . . such assessments [under the triennial districts plan] shall be deemed to be in compliance with the requirements of uniformity of taxation on the same class of subjects." Act of Nov. 9, 1965, P.L. 668, § 1.

14. We do not intend that today's decision will signal that statutorily-prescribed remedies may be aborted simply by an allegation, in a complaint in equity, of a constitutional issue. Given the necessary imprecision obtaining in this field, prudence would dictate following the statutory remedy where one exists. Such a course is not foreclosed simply because a court of equity may also have subject-matter jurisdiction. *See Studio Theatres, Inc. v. Washington,* 418 Pa. 73, at 79 n. 4, 209 A.2d 802 (1965).

15. Compare the doctrine of pendent jurisdiction in the federal courts: *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (". . . if . . . a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole." 383 U.S. at 725, 86 S.Ct. at 1138.

manded for further proceedings. Costs to abide the event.

O'BRIEN, J., joins in this opinion.

MANDERINO, J., concurs in the result.

ROBERTS, J., filed a concurring opinion in which O'BRIEN, J., joins.

JONES, C. J., and EAGAN and NIX, JJ., dissent.

ROBERTS, Justice (concurring).

I concur in the Court's conclusion that the court of common pleas sitting in equity has jurisdiction to decide appellants' constitutional challenge. Our decision in *Lynch* mandates this result. Regardless of the availability of a specific statutory remedy, a court of equity has jurisdiction to decide a broad constitutional challenge to the validity of a taxing statute or ordinance. *Lynch v. Owen J. Roberts School District*, 430 Pa. 461, 244 A.2d 1 (1968); *Studio Theaters, Inc. v. City of Washington*, 418 Pa. 73, 79, 209 A.2d 802, 805 (1965). See also *Rochester & Pittsburgh Coal Co. v. Board of Assessment*, 438 Pa. 506, 511, 266 A.2d 78, 80 (1970) (dissenting opinion of Roberts, J., joined by Bell, C. J.) ; *Crosson v. Downingtown Area School District*, 440 Pa. 468, 481, 270 A.2d 377, 383 (1970) (dissenting opinion of Roberts, J., joined by Bell, C. J.).

In *Lynch* this Court said:

"While we agree with the general proposition that equity will not entertain an action where plaintiff has an adequate statutory remedy at law, we also acknowledge the presence of an exception to that doctrine, existing where a taxing statute is made the subject of a *constitutional* challenge.

" 'The teaching of our case law is that, where the controversy involves a challenge to the constitutional

validity of a taxing statute or ordinance, such a controversy falls within the general class of cases wherein equity does have jurisdiction and competency to act. [Citations omitted.]' *Studio Theaters, Inc. v. City of Washington,* 418 Pa. 73, 79, 209 A.2d 802, 805 (1965). *See also, Philadelphia Life Ins. Co. v. Commonwealth,* 410 Pa. 571, 190 A.2d 111 (1963); *Young Men's Christian Assoc. of City of Reading v. City of Reading,* 402 Pa. 592, 167 A.2d 469 (1961) (dictum); cf. *Blue Cross Appeal,* 416 Pa. 574, 209 A.2d 799 (1965). Moreover, that this rule applies even in cases where there is a *specific* statutory remedy is shown clearly by *Studio Theaters* . . .."

430 Pa. at 565–566, 244 A.2d at 3–4.

The opinion announcing the judgment today departs from these principles by adopting a new balancing test which, it is asserted, will determine the jurisdiction of equity to resolve constitutional challenges to tax statutes. In my view, the suggested test, which is neither *Lynch* nor *Rochester & Pittsburgh Coal Co.,* only confuses the issue.

The opinion announcing the judgment begins its analysis by correctly observing that the "determination of the constitutionality of enabling legislation is not a function of the administrative agencies thus enabled." It then balances the "utility" of a constitutional adjudication before the tax review board under its specialized procedures against the "inconvenience, delay and expense involved" in these procedures. On the basis of this test, the majority concludes that, at least in this case, the "utility" of a tax appeals board decision is outweighed by the negative factors and concludes that the equity court has jurisdiction to adjudicate the challenge despite the statutory appeal procedure.

In my judgment, this analysis is totally unnecessary because it will always lead to exactly the same conclusion the Court reached in *Lynch.* Tax appeals boards were

created to review real estate tax assessments. They are totally unsuited both by skill and purpose to adjudicate constitutional issues. The board procedures may perhaps be adequate for deciding individual claims of improper assessment,* but they are plainly inadequate when faced with a broad-based attack on the constitutionality of a taxing statute, as here, or the assessment procedure. Necessarily, the multiple proceedings before the board involving separate and numerous challenges will always involve "inconvenience, delay and expense" which far exceeds the "utility" of board procedures. It should be noted that superimposed upon these disadvantages is the added burden of multiplicitous litigation and long periods of financial uncertainty for taxpayers and local government.

Under the variation of *Rochester & Pittsburgh Coal Co.*, as under *Lynch*, suggested in the opinion announcing the judgment a court of equity will always have jurisdiction to hear a constitutional challenge to a tax statute. All the majority presently does is inject extraneous and unhelpful factors into the courts' determinations and create confusion by suggesting that there is now some nebulous class of constitutional challenges that will somehow be denied consideration in equity.

Of course, the experimentation with the new balancing procedure is totally unnecessary for the result here. Under the holding of either *Lynch* or *Rochester & Pittsburgh Coal Co.*, the Allegheny County Court of Common Pleas has equitable jurisdiction to determine the consti-

---

* See, e. g., *Morris v. Board of Property Assessment,* 417 Pa. 192, 209 A.2d 407 (1965); *Deitch v. Board of Property Assessment,* 417 Pa. 213, 209 A.2d 397 (1965); *McKnight Shopping Center, Inc. v. Board of Property Assessment,* 417 Pa. 234, 209 A.2d 389 (1965); *Pittsburgh Miracle Mile Town & Country Shopping Center, Inc. v. Board of Property Assessment,* 417 Pa. 243, 209 A.2d 394 (1965); *Rieck Ice Cream Co., Appeal,* 417 Pa. 249, 209 A.2d 383 (1965); *Casa Loma, Inc. v. Board of Property Assessment,* 417 Pa. 257, 209 A.2d 387 (1965); *H. J. Heinz Co. v. Board of Property Assessment,* 417 Pa. 259, 209 A.2d 418 (1965).

tutionality of the statute. Therefore, there is no decisional need to choose between them, or to create the variation of *Rochester & Pittsburgh Coal Co.* suggested by the majority.

O'BRIEN, J., joins in this concurring opinion.