**[J-15-2023]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | |
|---|---|
| GLENN O. HAWBAKER, INC., | : No. 20 MAP 2022 |
| | : |
| Appellee | : Appeal from the Order of the |
| | : Commonwealth Court at No. 138 |
| | : MD 2021, dated January 19, 2022. |
| v. | : |
| | : ARGUED: April 18, 2023 |
| | : |
| COMMONWEALTH OF PENNSYLVANIA | : |
| DEPARTMENT OF TRANSPORTATION, | : |
| YASSMIN GRAMIAN, INDIVIDUALLY AND | : |
| MICHAEL CARROLL, IN HIS CAPACITY | : |
| AS ACTING SECRETARY OF | : |
| DEPARTMENT OF TRANSPORTATION, | : |
| MELISSA J. BATULA, P.E., INDIVIDUALLY | : |
| AND IN HER CAPACITY AS ACTING | : |
| EXECUTIVE DEPUTY SECRETARY FOR | : |
| THE DEPARTMENT OF | : |
| TRANSPORTATION, | : |
| | : |
| Appellants | : |

**OPINION**

**JUSTICE BROBSON**                                **DECIDED:** November 22, 2023

The Commonwealth of Pennsylvania, Department of Transportation; Yassmin Gramian, individually; Michael Carroll, in his capacity as Acting Secretary of the Department of Transportation; and Melissa J. Batula, P.E., individually and in her capacity as Acting Executive Deputy Secretary for the Department of Transportation (collectively, PennDOT) appeal from an order of the Commonwealth Court that denied, in part, and granted, in part, a "Motion for Adjudication of Civil Contempt or in the Alternative . . .

Motion for a Preliminary Injunction" (PI Motion) filed by Glenn O. Hawbaker, Inc. (Hawbaker). Pertinently, the Commonwealth Court's order preliminarily enjoined PennDOT from proceeding with any action for the debarment of Hawbaker as a prequalified bidder on PennDOT construction contracts based upon criminal charges filed against Hawbaker or Hawbaker's subsequent entry of a corporate nolo contendere plea to those criminal charges. We reverse.

## I. BACKGROUND

This procedurally and substantively complex matter implicates a multitude of statutory and regulatory frameworks. To begin, the State Highway Law (SHL)[1] tasks PennDOT with "construct[ing] or improv[ing], and thereafter maintain[ing] and repair[ing], at the cost and expense of the Commonwealth, the highways forming the plan or system of the State highways, in the several counties and townships." Section 401 of the SHL, 36 P.S. § 670-401. In connection with this obligation, the SHL empowers PennDOT to establish and maintain a regulatory "system for the qualification of competent and responsible bidders on highway projects." Section 404.1 of the SHL, 36 P.S. § 670-404.1.[2] PennDOT's regulations implementing this directive, which we discuss in detail below, are set forth in Chapter 457 of Title 67 of the Pennsylvania Code, 67 Pa. Code §§ 457.1-.17 (hereinafter referred to as the "Prequalification Regulations").

---

[1] Act of June 1, 1945, P.L. 1242, *as amended*, 36 P.S. §§ 670-101 to -1102.

[2] Section 404.1 of the SHL, titled "Prequalifications of bidders," more fully provides that PennDOT

> shall, by regulations, establish and may, from time to time, modify or supplement a system for the qualification of competent and responsible bidders on highway projects . . . . In determining the qualifications of bidders, [PennDOT] shall consider the following factors relating to the contractors: (1) equipment, (2) past record, (3) experience, (4) personnel of organization, [and] (5) financial condition. . . .

> [PennDOT] shall not consider from any bidder who is not qualified.

Hawbaker—a highway construction contractor based in State College, Pennsylvania, with approximately 1,000 employees—has been prequalified to bid on PennDOT construction contracts for decades and regularly performs such contracts throughout the Commonwealth.

On April 8, 2021, following an investigation, the Pennsylvania Office of Attorney General (OAG) filed a criminal complaint against Hawbaker, charging Hawbaker with four counts of theft by failure to make required disposition of funds received in violation of Section 3927(a) of the Crimes Code, 18 Pa. C.S. § 3927(a). Section 3927(a) of the Crimes Code defines this theft offense as follows:

> A person who obtains property upon agreement, or subject to a known legal obligation, to make specified payments or other disposition, whether from such property or its proceeds or from his own property to be reserved in equivalent amount, is guilty of theft if he intentionally deals with the property obtained as his own and fails to make the required payment or disposition. The foregoing applies notwithstanding that it may be impossible to identify particular property as belonging to the victim at the time of the failure of the actor to make the required payment or disposition.

The OAG based the criminal charges upon Hawbaker's alleged withholding of fringe benefit payments from its employees in violation of prevailing wage laws, including the Pennsylvania Prevailing Wage Act (PWA)[3] and the federal Davis-Bacon Act,[4] during calendar years 2015 through 2018.

By way of further background on Hawbaker's alleged violation of state prevailing wage laws, we observe that the PWA directs "all workmen employed on public work" to be paid by contractors "[n]ot less than the prevailing minimum wages as determined"

---

[3] Act of August 15, 1961, P.L. 987, *as amended*, 43 P.S. §§ 165-1 to -17.

[4] 40 U.S.C. §§ 3141-3148.

under the PWA.[5]  43 P.S. § 165-5.  The PWA's attendant regulations[6] define "[g]eneral prevailing minimum wage rates, prevailing wage rates, minimum wage rates and wage rates" as "[r]ates as determined by the Secretary [of the Pennsylvania Department of Labor and Industry (L&I)], as payable in the locality in which the public work is to be performed, for the respective crafts and classifications, including the amount of contributions for employe benefits as required by the [PWA]."  34 Pa. Code § 9.102 (emphasis omitted).  The PWA regulations further define "[c]ontributions for employe benefits" as "'[f]ringe benefits' paid or to be paid, including payment made whether directly or indirectly, to the workmen for sick, disability, death, other than Workmen's Compensation, medical, surgical, hospital, vacation, travel expense, retirement and pension benefits."  *Id.* (emphasis omitted).

Of additional note, while the OAG brought criminal theft charges against Hawbaker premised upon Hawbaker's alleged noncompliance with the PWA, the PWA itself is administered and enforced by L&I.[7]  *500 James Hance Court v. Pa. Prevailing Wage Appeals Bd.*, 33 A.3d 555, 557 (Pa. 2011); *see also* 43 P.S. § 165-14 (empowering Secretary of L&I "to prescribe, adopt, promulgate, rescind and enforce rules and regulations pertaining to the administration and enforcement of the provisions of the

---

[5] The PWA defines "public work," in relevant part, as "construction, reconstruction, demolition, alteration and/or repair work other than maintenance work, done under contract and paid for in whole or in part out of the funds of a public body where the estimated cost of the total project is in excess of twenty-five thousand dollars ($25,000)." 43 P.S. § 165-2(5).  The PWA defines "public body" to include "the Commonwealth of Pennsylvania[] . . . and any instrumentality or agency of the Commonwealth of Pennsylvania." 43 P.S. § 165-2(4).

[6] 34 Pa. Code §§ 9.101-.112.

[7] Indeed, Hawbaker characterizes the OAG's criminal prosecution of Hawbaker for purported prevailing wage law violations as "unprecedented," noting further that PWA violations historically have "been treated exclusively as civil matters handled by" L&I. (Hawbaker's Brief at 3.)

[PWA]"). The PWA places several duties on the Secretary of L&I—as well as public bodies and contractors—that are particularly relevant here. For instance, Section 11(a) of the PWA, 43 P.S. § 165-11(a), requires public bodies to notify the Secretary of L&I when a contractor fails to pay prevailing wages in connection with public work performed for the public body. Whenever the Secretary of L&I receives such a notification, "or whenever any workman employed upon public work . . . file[s] a timely protest objecting that he has been paid less than prevailing wages as required by the [PWA]" as permitted under Section 11(b) of the PWA, the Secretary of L&I is to conduct an investigation that entails "an appropriate hearing upon due notice to interested parties." 43 P.S. § 165-11(b)-(c). Additionally, the Secretary of L&I is to "determine whether or not there has been a failure to pay the prevailing wages and whether such failure was intentional or otherwise." 43 P.S. 165-11(c).

If the Secretary of L&I determines after notice and a hearing that a contractor has *unintentionally* failed to pay prevailing wages, the Secretary of L&I "shall afford [the contractor] a reasonable opportunity to adjust the matter by," *inter alia*, making the required payments. 43 P.S. § 165-11(d). If the Secretary of L&I determines after notice and a hearing that a contractor has *intentionally* failed to pay prevailing wages, the Secretary of L&I is to "notify all public bodies of the name" of the contractor and "no contract shall be awarded to such [contractor] . . . until three years have elapsed from the date of the notice to the public bodies." 43 P.S. § 165-11(e). Also, in the event of a contractor's *intentional* violation, the PWA imposes civil penalties upon the contractor and provides that the Secretary of L&I "may . . . request the Attorney General to proceed to recover the penalties for the Commonwealth of Pennsylvania." 43 P.S. § 165-11(e)-(f). Section 12 of the PWA, 43 P.S. § 165-12, further provides that, "[i]n any case where the [S]ecretary [of L&I] shall have determined that any person or firm has failed to pay the

prevailing wages under subsections (e) and (f) of section 11 . . . , he may direct the public body to terminate, and the public body may terminate, any such contractor's right to proceed with the public work."[8]

Returning to the facts of the present matter, in light of the criminal charges levied against Hawbaker by the OAG, PennDOT issued a Notice of Immediate Suspension (Suspension Notice) to Hawbaker on April 19, 2021, suspending Hawbaker from contracting with, bidding on, or participating in the award of contracts for Commonwealth-supervised or Commonwealth-funded highway construction work. PennDOT took this action pursuant to Section 457.13 of its Prequalification Regulations, 67 Pa. Code § 457.13, which provides that PennDOT "may" suspend or debar[9] a contractor on grounds including, *inter alia*, a contractor's "[c]omission of . . . theft" or other offenses, as well as a contractor's "[v]iolation of a State or Federal law regulating . . . prevailing wage standards":

---

[8] Furthermore, there exists a Pennsylvania Prevailing Wage Appeals Board that has "the power and duty to[] . . .[h]ear and determine any grievance or appeal arising out of the administrative of [the PWA]." 43 P.S. § 165-2.2(e)(1); *see also* 34 Pa. Code § 213.3(a) (providing for appeal to Prevailing Wage Appeals Board from final determination of Secretary of L&I in proceedings conducted under Section 11 of PWA).

[9] Section 457.1 of the Prequalification Regulations, 67 Pa. Code § 457.1, defines "debarment" and "suspension," in relevant part, as follows:

> *Debarment*—Action taken by [PennDOT] to prohibit a contractor, subcontractor or individual from contracting with or participating in contracts with [PennDOT] for a specified period. . . .
>
>          . . . .
>
> *Suspension*—Action taken by [PennDOT] to temporarily prohibit a contractor, subcontractor or individual from contracting with or participating in contracts with [PennDOT]. It may be for a period of up to 3 months, pending the completion of an investigation which could lead to debarment or legal proceedings. The period of suspension may be extended for good cause. . . .

§ 457.13. Suspension or debarment.

(a) *Reasons for suspension or debarment.* [PennDOT] may temporarily suspend or may debar, for a set period or permanently, a contractor, subcontractor or individual from bidding on or participating in State supervised or funded highway construction work for any of the following reasons:

(1) Commission of . . . theft[] . . . .

(2) Commission of fraud or a criminal offense or other improper conduct or knowledge or approval of, or acquiescence in these activities by a contractor or an affiliate, officer, employe or other individual or entity associated with either obtaining, attempting to obtain or performing a public contract or subcontract. The contractor's acceptance of the benefits derived from the conduct shall be deemed evidence of knowledge, approval or acquiescence.

. . . .

(6) Violation of a State or Federal law regulating hours of labor, minimum wage standards or prevailing wage standards; discrimination in wages; or child labor violations.

According to the Suspension Notice, PennDOT specifically relied upon Sections 457.13(a)(2) and (a)(6) as the bases for suspension.

Of further relevance, Section 457.13 of PennDOT's Prequalification Regulations provides as follows concerning the evidence and circumstances supporting a suspension and debarment, as well as the procedure and timing for suspensions:

(b) *Substantial evidence.* The filing of criminal charges or initiation of legal proceedings for any of the reasons in subsection (a)(1)—(8) may constitute substantial evidence for suspension.

(c) *Debarment based on criminal conduct.* Debarment solely on the basis of any of the reasons in subsection (a)(1)—(8) shall be based on a conviction or plea of guilty or no contest in a court of law or a finding, ruling or adjudication of guilt for noncompliance by a court of law, commission, board or administrative body. It is not required that the appeals process be completed or that a sentence or other penalty be imposed.

. . . .

(g) *Suspension procedure*. When a suspension is imposed against a contractor or an affiliate, [PennDOT] will immediately notify the contractor and any specifically named affiliate, officer, employe or other individual or entity associated with the contractor, by certified mail, return receipt requested and regular mail that it has been:

>   (1) Suspended for an initial period of up to 3 months accompanied by a concise statement of the reasons for the suspension.

>   (2) Declared ineligible for [PennDOT] contracting and subcontracting pending the completion of investigation and ensuing legal proceedings. During the suspension period, the contractor shall make available all relevant documents, records and information to investigators.

(h) *Reply to suspension*. A contractor, subcontractor or individual suspended by [PennDOT] may, within 21 days after the suspension mailing date, submit, in person, in writing, or through a representative, information in opposition to the suspension. Upon review of the information or the completion of an investigation, or both, [PennDOT] will notify the contractor, subcontractor or individual whether the suspension shall be continued or withdrawn or whether debarment proceedings will be initiated.

67 Pa. Code § 457.13(b)-(c), (g)-(h). Here, PennDOT's Suspension Notice provided that the filing of criminal charges against Hawbaker and the underlying allegations constituted substantial evidence for suspension for an initial period of up to three months under Section 457.13(b) and (g)(1). Notably, while PennDOT's Prequalification Regulations do not afford a contractor a hearing in the suspension context either pre- or post-suspension, PennDOT nonetheless scheduled an administrative hearing on Hawbaker's suspension.[10]

In response to the Suspension Notice, on May 4, 2021, Hawbaker filed a five-count petition for review in the nature of a complaint in equity (Petition) in the Commonwealth Court, requesting injunctive and declaratory relief. In its first count, Hawbaker claimed that PennDOT's suspension procedures violate due process because, *inter alia*, they allow PennDOT to issue an immediate suspension without first conducting its own full investigation into the alleged conduct and providing a hearing. In its second count,

---

[10] The Commonwealth Court later stayed the hearing pending further order.

Hawbaker claimed that PennDOT lacked jurisdiction over the debarment proceedings because L&I has exclusive jurisdiction over investigations and debarment actions involving PWA violations pursuant to a different and more fulsome process. In its third count, Hawbaker claimed that PennDOT was precluded from suspending or debarring Hawbaker under the doctrine of laches, as PennDOT (and other agencies, including L&I) had conducted several investigations into Hawbaker's prevailing wage and fringe benefit practices or were otherwise aware of those practices for decades and took no issue with the same. Hawbaker asserted in its fourth count that there was not substantial evidence of a crime sufficient to support a suspension under PennDOT's Prequalification Regulations, including through the OAG's filing of criminal charges against Hawbaker. Finally, in its fifth count, Hawbaker argued that PennDOT's suspension proceedings were premature and should be stayed pending conclusion of the criminal matter.

PennDOT filed an answer with new matter to Hawbaker's Petition. While PennDOT generally denied most of Hawbaker's factual allegations, PennDOT admitted that it did not perform its own investigation into Hawbaker's conduct as alleged in the OAG's criminal complaint or Hawbaker's prevailing wage fringe credit practices. PennDOT maintained that it suspended Hawbaker because Hawbaker was formally charged with crimes arising out of prevailing wage law violations, as PennDOT was authorized to do. PennDOT further asserted, *inter alia*, that it was providing Hawbaker with all the process that was due under the circumstances, that Hawbaker's assertion of laches was improper and meritless, and that Hawbaker failed to exhaust its administrative remedies.

Simultaneous with its Petition, Hawbaker filed a motion for preliminary injunction, which PennDOT opposed. Hawbaker filed a reply to PennDOT's new matter, and the parties entered into a stipulation of certain facts. Following a hearing and briefing by the

parties, the Commonwealth Court granted a preliminary injunction against PennDOT in a single-judge memorandum opinion and order authored by Judge McCullough. *Glenn O. Hawbaker, Inc. v. Commonwealth of Pa., Dep't of Transp.*, (Pa. Cmwlth., No. 138 M.D. 2021, filed June 30, 2021) (*Hawbaker I*). The Commonwealth Court applied the following well-settled standard for awarding such relief:

> The six essential prerequisites that a moving party must demonstrate to obtain a preliminary injunction are as follows: (1) the injunction is necessary to prevent immediate and irreparable harm that cannot be compensated adequately by damages; (2) greater injury would result from refusing the injunction than from granting it, and, concomitantly, the issuance of an injunction will not substantially harm other interested parties in the proceedings; (3) the preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; (4) the party seeking injunctive relief has a clear right to relief and is likely to prevail on the merits; (5) the injunction is reasonable suited to abate the offending activity; and, (6) the preliminary injunction will not adversely affect the public interest.

*SEIU Healthcare Pa. v. Commonwealth*, 104 A.3d 495, 501-02 (Pa. 2014).

The Commonwealth Court began with the fourth prerequisite—*i.e.*, whether Hawbaker had a clear right to relief and was likely to prevail on the merits—and noted that Hawbaker "need not prove the merits of the underlying claim, but need only demonstrate that substantial legal questions must be resolved to determine the rights of the parties" to establish a clear right to relief. *Hawbaker I*, slip op. at 20 (quoting *SEIU Healthcare*, 104 A.3d at 506). The Commonwealth Court concluded that Hawbaker raised several substantial legal questions, including various due process concerns relative to PennDOT's Prequalification Regulations. Relying particularly upon Hawbaker's argument that suspension of a contractor's prequalification status without a prior hearing violated due process, the Commonwealth Court noted that it had already found that the Prequalification Regulations' failure to provide a suspension hearing at any point violated due process in *Balfour Beatty Construction, Inc. v. Department of Transportation*, 783 A.2d 901, 909 (Pa. Cmwlth. 2001), but PennDOT had still not

amended the regulations. Unpersuaded by PennDOT's attempts to distinguish *Balfour*, the Commonwealth Court added that Hawbaker had also raised legitimate due process concerns about the adequacy of a post-suspension hearing. In support, the Commonwealth Court noted the "immediate and substantial" effects of the suspension, which, as evidenced at the hearing on the preliminary injunction, prevented Hawbaker from winning pending bids, serving as a subcontractor on projects where a contract had not yet been finalized, and participating in scheduled bid lettings. *Id.* at 24. The Commonwealth Court further observed that PennDOT's "admissions and legal arguments asserted before th[e Commonwealth] Court call[ed] into question whether a post-suspension hearing for Hawbaker under these circumstances has any meaning whatsoever." *Id.* at 25.

Indeed, turning to the underlying grounds for suspension, the Commonwealth Court observed that Hawbaker raised a substantial challenge as to whether PennDOT "can suspend a contractor based solely on the filing of criminal charges." *Id.* Rejecting the notion that PennDOT was authorized to take such action simply because Section 457.13(b) of PennDOT's Prequalification Regulations permitted it, the Commonwealth Court observed that PennDOT's position was untenable in light of Section 457.13(a) of the Prequalification Regulations, which required "commission" of a crime or a "violation" of prevailing wage laws. 67 Pa. Code § 457.13(a)(1)-(2), (a)(6). The Commonwealth Court reasoned that "[t]he allegations in [the] OAG's criminal complaint have yet to be proven and cannot, in and of themselves, serve as substantial evidence that Hawbaker *committed* a criminal offense or violated the law." *Hawbaker I*, slip op. at 26 (emphasis in original). The Commonwealth Court further explained that PennDOT had made it clear that it did "not intend to produce actual evidence" during any suspension hearing it would provide to Hawbaker, which ran "afoul of the concept that it bears the

burden of proof regarding a suspension." *Id.* at 26-27. The Commonwealth Court observed that, "[r]egardless of the fact that Hawbaker is defending itself in an administrative process rather than a criminal prosecution, the nature of the deprivation to Hawbaker is significant and it has raised substantial questions pertaining to due process and the adequacy of any post-suspension hearing [Penn]DOT may provide." *Id.* at 27.

Pertinently, in a footnote, the Commonwealth Court rejected PennDOT's challenge to the Commonwealth Court's jurisdiction on the grounds that Hawbaker failed to exhaust its administrative remedies. The Commonwealth Court observed that the exhaustion doctrine "normally bars th[e Commonwealth] Court from hearing claims of declaratory or injunctive relief with respect to agency action" but that the "doctrine is neither inflexible nor absolute." *Id.* at 28 n.22 (quoting *Cnty. of Berks v. Pa. Office of Open Records*, 204 A.3d 534, 540 (Pa. Cmwlth. 2019)). Observing that this Court "has recognized three exceptions to the doctrine," including "where (i) the jurisdiction of an agency is challenged, (ii) the constitutionality of the statute is challenged[,] or (iii) the remedy at law is inadequate," the Commonwealth Court explained that at least two exceptions applied. *Id.* (quoting *Cnty. of Berks*, 204 A.3d at 540). Specifically, the Commonwealth Court explained that Hawbaker met the "constitutional attack" exception by claiming that PennDOT's Prequalification Regulations violate its right to due process. The Commonwealth Court added that the exhaustion doctrine did not apply because "the administrative remedy here would be of little, if any[,] value and is inadequate as Hawbaker would continue to suffer irreparable harm throughout the administrative process." *Id.*

Next, the Commonwealth Court held that Hawbaker had established that a preliminary injunction was necessary to prevent immediate and irreparable harm that could not be adequately compensated by money damages. Rejecting PennDOT's claim

that Hawbaker failed to prove this requirement because it does not have a right to do business with the Commonwealth and claimed only speculative loss of bidding opportunities, the Commonwealth Court explained that "[t]he crux of Hawbaker's claims . . . is that [Penn]DOT's regulations violate due process" and that "alleged violations of constitutional rights and statutory mandates constitute irreparable harm *per se.*" *Id.* at 29-30. The Commonwealth Court added that "the impending loss of a business opportunity is considered to be irreparable harm" for purposes of obtaining equitable relief and that Hawbaker had presented uncontested evidence relative to its loss of business since PennDOT issued the Suspension Notice. *Id.* at 30-31 (quoting *Carlini v. Highmark*, 756 A.2d 1182, 1188 (Pa. Cmwlth. 2000), *appeal denied*, 775 A.2d 809 (Pa. 2001)). The Commonwealth Court further noted its cognizance "of the fact that Hawbaker may be unable to recoup any damages from [Penn]DOT given various immunities the agency may be entitled to assert." *Id.* at 31 n.23 (relying upon *Boykins v. City of Reading*, 562 A.2d 1027, 1028-29 (Pa. Cmwlth. 1989) (holding that irreparable harm requirement for preliminary injunctive relief was met where sovereign immunity precluded recovery of damages for lost profits)).

The Commonwealth Court then conducted a "balancing of the harms" analysis and reiterated that, in addition to the substantial constitutional issues raised, Hawbaker presented credible evidence of the significant harm Hawbaker had already suffered and would continue to suffer if the Commonwealth Court did not enjoin PennDOT's suspension. The Commonwealth Court explained that, conversely, PennDOT only alleged that an injunction would impair its ability to promote the policy of integrity in highway contracting, yet it had "not provided *any* evidence of Hawbaker's alleged lack of integrity beyond the filing of [unproven] criminal charges" that related to Hawbaker's conduct years prior. *Id.*, slip op. at 31-32 (emphasis in original). Additionally, noting that

Hawbaker had been conducting business in the Commonwealth as a prequalified contractor since the OAG served a search warrant in 2018, the Commonwealth Court could not say that Hawbaker posed an immediate threat to the integrity of highway contracting or the public interest, thereby concluding that these considerations weighed in favor of granting the preliminary injunction. Finally, the Commonwealth Court concluded that enjoining PennDOT from enforcing the Suspension Notice restored the status quo between the parties but that the specific relief Hawbaker requested was too broad because "it would prohibit [Penn]DOT from *ever* suspending or debarring Hawbaker for anything arising out of [the] OAG's criminal charges or for *any* violation of the PWA or the Davis-Bacon Act." *Id.*, slip op. at 33 (emphasis in original). Accordingly, the Commonwealth Court enjoined PennDOT from enforcing the Suspension Notice and "proceeding with any further suspension or debarment action against Hawbaker as a result of the issues addressed [in *Hawbaker I*]." *Id.* at Order Page.

Thereafter, on September 23, 2021, Hawbaker filed in the Commonwealth Court a motion for leave to amend its Petition (Motion to Amend) based upon changes of material facts occurring after the Commonwealth Court issued *Hawbaker I*. Hawbaker specifically explained that, on August 3, 2021, Hawbaker entered a corporate plea of nolo contendere to the four counts of theft through a plea agreement with the OAG. Pursuant to the plea agreement, Hawbaker agreed to pay over $20 million to the alleged victims who were purportedly underpaid and agreed to a proposed sentence of five years of probation on each count of theft, with the sentences to run concurrently. Hawbaker also agreed to submit to oversight by a corporate monitor at Hawbaker's expense to oversee Hawbaker's compliance with all state and federal prevailing wage laws and regulations as a condition of probation. In exchange, the OAG agreed not to bring any additional criminal charges against Hawbaker or any of its shareholders, officers, and employees

for conduct occurring between January 1, 2015, through the time that Hawbaker and the OAG entered the plea agreement. Hawbaker further averred that, according to its understanding of its entry of the nolo contendere plea, Hawbaker did not plead guilty to the underlying theft charges, which Hawbaker still disputed, and the nolo contendere plea could not be used as proof of the underlying commission of any offense in a subsequent civil or administrative proceeding. Hawbaker claimed that, despite Hawbaker's understanding, PennDOT initiated debarment proceedings against Hawbaker on September 3, 2021, by filing at its administrative docket a request for an order to show cause (Request) why Hawbaker should not be debarred for up to three years based on Hawbaker's entry of the nolo contendere plea.[11] PennDOT cited Section 457.13(a)(1) of

---

[11] We highlight that PennDOT's initiation of debarment proceedings against Hawbaker pursuant to the Request differed from the way it initiated the prior suspension proceedings—*i.e.*, through the issuance of the Suspension Notice. In this regard, we observe that Section 457.14 of PennDOT's Prequalification Regulations outlines a "[d]ebarment appeals procedure" that, when read in conjunction with Section 457.13, *supra* at pages 7-8, suggests debarment proceedings likewise begin under the Prequalification Regulations via issuance of a notice of debarment, with further proceedings to follow:

§ 457.14. Debarment appeals procedure.

(a) *General provisions*. A contractor, subcontractor or individual debarred by [PennDOT] under § 457.13 (relating to suspension or debarment) may appeal the debarment in writing within 10 working days after the mailing date of the notice of debarment. The appeal shall set forth the basis therefor.

(b) *Conformity with administrative practice and procedures; requests for hearing*. Debarment hearings will be in conformity with 1 Pa. Code Part II (relating to general rules of administrative practice and procedure), as supplemented by Chapter 491 (relating to administrative practice and procedure). A filing fee is not required for a debarment hearing. In § 491.3 (relating to request for hearing), requests for debarment hearings and all other papers relating to the case shall be filed with [PennDOT's] Administrative Docket Clerk . . . .

. . . .

(continued…)

the Prequalification Regulations (relating to the "[c]ommission of . . . theft") as the basis for debarment. PennDOT also claimed that "Hawbaker . . . knowingly and intentionally established . . . its commission of the crime of theft" for debarment purposes under Section 457.13(c) of the Prequalification Regulations "[b]y entering a plea of no contest to four counts of the crime of theft." (Original Record (O.R.), Item No. 27, PI Motion, Exhibit 1 (PennDOT's Request for an Order to Show Cause), ¶¶ 7-8). On September 7, 2021, a PennDOT hearing officer issued the rule to show cause.

Hawbaker alleged that the above new facts gave rise to additional legal issues, which Hawbaker sought to advance in an amended petition for review (Amended Petition). Hawbaker set forth seven counts in the Amended Petition, in which it invoked the Commonwealth Court's original jurisdiction and requested injunctive and declaratory

---

> (c) *Informal meeting.* A contractor, subcontractor or individual debarred by [PennDOT] may, after filing an appeal, request an informal meeting with [PennDOT] prior to the holding of a debarment hearing for the purpose of discussion of the debarment action or presentation of additional evidence which the contractor, subcontractor or individual may want [PennDOT] to take into consideration. Requests for informal meetings shall be made in writing to the Prequalification Office. [PennDOT] will issue, within 10 working days after an informal meeting, a written notification of whether it is withdrawing or modifying the debarment action. The contractor, subcontractor or individual may then, at his option, continue with, amend or withdraw the appeal.
>
> (d) *Debarment by other agencies.* A contractor, subcontractor, supplier or individual debarred by the Commonwealth or an agency thereof under the Commonwealth's Contractor Responsibility Program as set forth in Management Directive 215.9 shall be subject to debarment by [PennDOT] without right of appeal.

67 Pa. Code § 457.14. Notwithstanding the above, in initiating debarment proceedings against Hawbaker by filing the Request at its administrative docket, PennDOT explained that it was taking such action pursuant to the General Rules of Administrative Practice and Procedure (GRAPP), 1 Pa. Code §§ 31.1-35.251, and PennDOT's supplemental regulations pertaining to administrative practice and procedure before PennDOT (Supplemental Regulations), 67 Pa. Code §§ 491.1-.13. We discuss this alternative procedure below in further detail.

relief relative to: (1) whether *Hawbaker I* bars PennDOT's debarment action; (2) whether PennDOT's Prequalification Regulations require an affirmative demonstration of the commission of a crime before debarment can occur due to alleged criminal conduct, and whether a nolo contendere plea can be used to demonstrate commission of a crime or violation of the law; (3) whether PennDOT's Prequalification Regulations are unconstitutional to the extent they contemplate debarment based solely on a nolo contendere plea; (4) whether PennDOT's initiation of debarment proceedings under the facts of this case is unconstitutional because it violates Hawbaker's rights under the Fifth and Eighth Amendments to the United States Constitution; (5) whether L&I has exclusive jurisdiction over debarment actions relating to prevailing wage issues; (6) whether PennDOT is precluded from issuing any suspension or debarment relating to Hawbaker's alleged conduct under the doctrine of laches; and (7) whether the prohibition against the commingling of prosecutorial and adjudicatory functions precludes PennDOT hearing officers from handling the debarment proceedings.

On the same date that Hawbaker filed its Motion to Amend, Hawbaker also filed the PI Motion at issue in this appeal. Therein, Hawbaker asserted that the preliminary injunction resulting from *Hawbaker I* prohibited PennDOT's debarment action and sought a ruling from the Commonwealth Court on that question. Hawbaker further claimed that a motion for civil contempt was the proper procedural mechanism for seeking such a ruling but also requested that, if the prior injunction did not preclude PennDOT's debarment action, the Commonwealth Court grant a second or amended preliminary injunction. On October 1, 2021, the Commonwealth Court, *inter alia*, granted Hawbaker's Motion to Amend, docketed Hawbaker's Amended Petition, and stayed all administrative proceedings before PennDOT relating to Hawbaker's debarment pending further order.

Thereafter, PennDOT filed an answer to Hawbaker's PI Motion, the parties entered into another stipulation of certain facts, and the Commonwealth Court held a second hearing.

On January 19, 2022, following further briefing by the parties, the Commonwealth Court denied, in part, and granted, in part, Hawbaker's PI Motion, again in a single-judge memorandum opinion and order authored by Judge McCullough. *Glenn O. Hawbaker, Inc. v. Commonwealth of Pa., Dep't of Transp.* (Pa. Cmwlth., No. 138 M.D. 2021, filed Jan. 19, 2022) (*Hawbaker II*). The Commonwealth Court specifically denied Hawbaker's PI Motion insofar as Hawbaker requested that court to hold PennDOT in contempt of the decision and order in *Hawbaker I*, but the Commonwealth Court concluded that Hawbaker established all of the essential prerequisites for the grant of a new, or amended, preliminary injunction. The Commonwealth Court again began with the fourth prerequisite for such relief—*i.e.*, whether Hawbaker had a clear right to relief and was likely to prevail on the merits—and concluded that Hawbaker raised several substantial legal questions, such as whether PennDOT has jurisdiction to institute the debarment proceedings given that "[t]he PWA establishes a thorough scheme for handling prevailing wage disputes, including prosecuting and penalizing violations through an administrative hearing process managed by L&I" and not PennDOT. *Id.* at 17. In doing so, the Commonwealth Court rejected PennDOT's position that "its debarment notice [arose] solely from the criminal charges filed against Hawbaker and its nolo contendere plea, without implicating the prevailing wage laws, and that a debarment on such grounds is specifically contemplated by [Penn]DOT's prequalification regulations." *Id.* at 18. The Commonwealth Court reasoned that the criminal charges filed against Hawbaker were for theft by failure to make required dispositions of funds received, which requirement "specifically stem[med] from the PWA and the Davis-Bacon Act" as demonstrated by [the] OAG's criminal complaint and the plea agreement. *Id.*

The Commonwealth Court also explained that Hawbaker "raise[d] legitimate concerns that allowing multiple agencies to proceed against it for purported violations of the PWA could subject Hawbaker to punitive, inconsistent, and unfair consequences." *Id.* The Commonwealth Court observed that, while "the PWA only contemplates debarment of a contractor based upon a finding that the prevailing wage violation was intentional," PennDOT's "[P]requalification [R]egulations do not contemplate such an inquiry" and PennDOT claimed that Hawbaker had "knowingly and intentionally established, for debarment purposes . . . its commission of the crime of theft" simply by entering the nolo contendere plea. *Id.* (quoting Answer to PI Motion, Exhibit B (PennDOT's Request), ¶7). The Commonwealth Court observed that "[t]his undeniable conflict also call[ed] into question the adequacy of the administrative remedy provided by [Penn]DOT through its debarment proceedings." *Id.* The Commonwealth Court further reasoned that Hawbaker again raised significant due process concerns relative to PennDOT's "administrative process and regulations, including whether Hawbaker's entry of the nolo contendere plea can be used against it in a subsequent administrative proceeding and whether entry of the plea is enough, in and of itself, to establish the *commission* of the crime of theft under [Penn]DOT's regulations." *Id.* at 19 (emphasis in original). Additionally noting Hawbaker's assertion of laches, the Commonwealth Court concluded that Hawbaker had satisfied the fourth prerequisite for the issuance of a preliminary injunction.

The Commonwealth Court next concluded that Hawbaker demonstrated that an injunction was necessary to prevent immediate and irreparable harm that cannot be compensated adequately by money damages. Referencing Hawbaker's presentation of substantial questions relating to PennDOT's "statutory authority to suspend a contractor for prevailing wage violations" and potential due process violations, the Commonwealth Court noted Hawbaker's additional argument that "it should not be forced to defend itself

at a debarment process in more than one forum, or in the wrong forum where it is subject to an improper statutory burden and standard of review." *Id.* The Commonwealth Court reiterated that "[i]t is well established that statutory and constitutional violations constitute irreparable harm *per se* and that no further showing on this prerequisite is necessary for a preliminary injunction to issue." *Id.*

The Commonwealth Court further concluded that "a balancing of the harms here militates in favor of granting the preliminary injunction." *Id.* at 20. The Commonwealth Court reiterated that, while PennDOT maintained that an injunction would impair its ability to promote the policy of integrity in highway contracting, the OAG's criminal complaint pertained to Hawbaker's conduct during a set period of past years and PennDOT admitted that Hawbaker subsequently changed its prevailing wage practices. The Commonwealth Court further noted that a corporate monitor was overseeing Hawbaker's compliance with prevailing wage laws and that Hawbaker has been conducting business in the Commonwealth as a prequalified contractor for decades but for a brief interruption following PennDOT's Suspension Notice. The Commonwealth Court, thus, disagreed that "Hawbaker currently poses an immediate threat to the integrity of highway contracting or that a preliminary injunction would adversely affect the public interest." *Id.* Finally, the Commonwealth Court held that Hawbaker's request for injunctive relief would maintain the status quo, which the Court identified as "the parties' status prior to [Penn]DOT's institution of debarment proceedings," and that "Hawbaker's request that [PennDOT] be enjoined from proceeding with any debarment action arising out of [the] OAG's criminal charges or Hawbaker's entry of its nolo contendere plea is reasonably suited to abate the offending activity." *Id.* at 20-21. Based on the foregoing, the Commonwealth Court granted Hawbaker's PI Motion to the extent that it sought a preliminary injunction and enjoined PennDOT "from proceeding with any debarment action arising out of the [OAG's]

criminal charges against [Hawbaker] or [Hawbaker's] entry of a corporate nolo contendere plea." *Id.* at Order Page.

## II. ISSUES

On appeal,[12,13] PennDOT asks us to decide whether the Commonwealth Court erred by: (1) exercising equitable jurisdiction where Hawbaker failed to exhaust administrative remedies; (2) granting preliminary injunctive relief where Hawbaker failed to meet all of the essential prerequisites for such relief;[14] and (3) granting permanent injunctive relief based solely on evidence adduced at a hearing for preliminary injunctive relief.

---

[12] PennDOT filed a direct appeal as of right from the Commonwealth Court's order granting preliminary injunctive relief. *See* Pa.R.A.P. 311(a)(4) (providing that appeal may generally be taken as of right from order granting injunction).

[13] During the pendency of this appeal, the Commonwealth Court issued a decision disposing of preliminary objections that PennDOT had filed to Hawbaker's Amended Petition in the interim of *Hawbaker I* and *Hawbaker II*. *Glenn O. Hawbaker, Inc. v. Dep't of Transp.* (Pa. Cmwlth., No. 138 M.D. 2021, filed January 24, 2023) (*Hawbaker III*). Specifically, the Commonwealth Court overruled PennDOT's preliminary objections that assert: (1) that the Commonwealth Court lacked jurisdiction to address the issues raised in the Amended Petition based upon Hawbaker's failure to exhaust administrative remedies; (2) a demurrer to Hawbaker's due process claim; (3) a demurrer to Hawbaker's jurisdictional challenge; and 4) a demurrer to Hawbaker's claim relative to PennDOT's commingling of prosecutorial and adjudicatory functions. *Id.* at 5-13, 15. The Commonwealth Court also sustained demurrers that PennDOT asserted relative to Hawbaker's claims regarding whether PennDOT's debarment action should be enjoined based on *Hawbaker I*, PennDOT's Prequalification Regulations permit debarment based solely on a nolo contendere plea, the debarment proceedings violate Hawbaker's Fifth and Eighth Amendment rights, and PennDOT's debarment proceedings are barred by laches. *Id.* at 8-9, 12-14. As such, the Commonwealth Court dismissed Counts I, II, IV, and VI of Hawbaker's Amended Petition with prejudice and directed PennDOT to file an answer to the remaining counts.

[14] The Pennsylvania Foundation for Fair Contracting (Foundation) has filed an *amicus curiae* brief on behalf of PennDOT. The Foundation argues that the Commonwealth Court erred in awarding preliminary injunctive relief to Hawbaker where Hawbaker failed to establish a clear right to relief and a likelihood of prevailing on the merits.

## III. ANALYSIS

We begin with PennDOT's claim that the Commonwealth Court erred by exercising equitable jurisdiction herein because Hawbaker failed to exhaust available and adequate administrative remedies.[15] "It is fundamental that prior to resorting to judicial remedies, litigants must exhaust all the adequate and available administrative remedies which the legislature has provided." *Cnty. of Berks ex rel. Baldwin v. Pa. Labor Rels. Bd.*, 678 A.2d 355, 360 (Pa. 1996); *see also Dep't of Pub. Welfare v. Eisenberg* (*Eisenberg I*), 454 A.2d 513, 514-15 (Pa. 1982) ("Where injunctive relief is sought, our initial focus should be on the threshold question regarding whether equity jurisdiction is appropriate. That equity will not intervene where there is available an adequate statutorily prescribed remedy at law[] is a principle well established in this Commonwealth."). The exhaustion

> doctrine is a court-made rule intended to prevent premature judicial intervention into the administrative process. A court is [t]o defer judicial review where the question presented is one within an agency specialization and where the administrative remedy is likely to produce the desired result. The doctrine operates as a restraint on the exercise of a court's equitable powers and a recognition of the legislature's direction to comply with statutorily-prescribed remedies.

*Empire Sanitary Landfill, Inc. v. Dep't of Env't Res.*, 684 A.2d 1047, 1053 (Pa. 1996) (alteration in original) (citations and internal quotation marks omitted). Nonetheless, the exhaustion doctrine is not absolute. *Feingold v. Bell of Pa.*, 383 A.2d 791, 793 (Pa. 1977). Indeed, the parties do not contest the general applicability of the exhaustion doctrine but, instead, focus their advocacy on whether any of the recognized exceptions apply. In particular, while PennDOT argues that no exception to the exhaustion doctrine applies, Hawbaker asserts that it meets three exceptions recognized by our courts—*i.e.*, where

---

[15] With regard to questions concerning the exhaustion of administrative remedies, "we consider whether the lower court abused its discretion or committed an error of law." *Rehab. & Cmty. Providers Ass'n v. Dep't of Human Servs. Off. of Dev. Programs*, 283 A.3d 260, 267 (Pa. 2022). "As to any question of law, our review is *de novo* and plenary." *Id.*

"the jurisdiction of the agency is challenged; . . . the constitutionality of [a] statutory scheme is challenged; or . . . the remedy provided by the agency is inadequate." (Hawbaker's Brief at 14.)

Beginning with the exception relating to jurisdictional challenges, Hawbaker is correct that our courts have recognized an exception to the doctrine in cases involving such attacks. *See, e.g.*, *Empire Sanitary Landfill, Inc.*, 684 A.2d at 1054 (identifying exception to exhaustion doctrine "where the jurisdiction of an agency is challenged"); *Nat'l Solid Wastes Mgmt. Ass'n v. Casey*, 580 A.2d 893, 897 (Pa. Cmwlth. 1990) (same). Nonetheless, we reject the notion that this exception is so broad as to encompass any instance in which a party has lodged a challenge to the jurisdiction of an agency. To this point, we have observed that the exhaustion doctrine will not apply relative to jurisdictional challenges when "a litigant makes a *purely legal* challenge to an agency's jurisdiction." *Se. Pa. Transp. Auth. v. City of Phila.*, 101 A.3d 79, 90 (Pa. 2014) (emphasis added). This is as compared to a fact-based challenge to an agency's jurisdiction, which is insufficient to overcome application of the exhaustion doctrine. *See Mercy Hosp. of Pittsburgh v. Pa. Hum. Rel. Comm'n*, 451 A.2d 1357, 1359 & n.1 (Pa. 1982) (concluding that exhaustion doctrine applied where "[t]here [was] no question that the [Pennsylvania Human Relations Commission (PHRC) was] vested with the authority to consider and decide the challenge raised to its jurisdiction over the matter," where challenge concerned whether "employment relationship" existed between physician and hospital); *Pa. Transp. Auth.*, 101 A.3d at 90 (finding exhaustion doctrine inapplicable where party presented "purely legal challenge to an agency's jurisdiction, not a factual one" as was case in *Mercy Hospital of Pittsburgh*); *Cnty. of Berks v. Pa. Off. of Open Recs.*, 204 A.3d 534, 542 (Pa. Cmwlth. 2019) (explaining that jurisdictional-challenge "exception applies where there is a matter pending before an agency and the party seeking declaratory or injunctive relief

challenges the jurisdiction of the agency to proceed in that matter on purely legal grounds that do not depend on the resolution of factual issues").

Here, Hawbaker argues that the jurisdictional-attack exception to the exhaustion doctrine applies based on its claim that L&I, and not PennDOT, has exclusive jurisdiction over the instant debarment proceedings given that the proceedings are, at bottom, premised upon PWA violations. PennDOT, however, argues that there is no question that it has jurisdiction to debar contractors from bidding on highway projects pursuant to Section 404.1 of the SHL and that it is not seeking to debar Hawbaker based upon violations of the PWA. Rather, as evidenced by PennDOT's Request and the subsequently-issued rule to show cause, the sole basis PennDOT relies upon for debarring Hawbaker is the "[c]ommission of . . . theft" as provided for in Section 457.13(a)(1) of PennDOT's Prequalification Regulations, irrespective of any PWA violations. Moreover, PennDOT maintains that it will seek to prove Hawbaker's commission of theft through the fact of Hawbaker's convictions for that criminal offense as evidenced by Hawbaker's nolo contendere plea, which Hawbaker argues PennDOT cannot do. In view of these circumstances, Hawbaker's jurisdictional challenge implicates, in part, outstanding and disputed issues of fact, particularly as to the underlying conduct of Hawbaker and circumstances serving as the basis for debarment.[16]

_____

[16] Of further note, in *Mercy Hospital*, the physician had also advanced an argument that the Peer Review Protection Act, Act of July 20, 1974, P.L. 564, *as amended*, 63 P.S. §§ 425.1-.4, prohibited the hospital "from introducing at any PHRC proceeding any testimony or evidence pertaining to [a] peer review hearing" for purposes of establishing that its basis for denying the physician staffing privileges was not based upon racial prejudice. *Mercy Hosp.*, 451 A.2d at 1359 n.2. This Court concluded that, in the event that the PHRC determined that it had jurisdiction over the matter, it was also for the PHRC to resolve in the first instance whether there was in fact a conflict between the Pennsylvania Human Relations Act (PHRA), Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§ 951-963, and the Peer Review Protection Act as alleged and, if so, to "attempt to reconcile any tension." *Id.* at 1359-60. As such, the Court was unpersuaded by the physician's "convoluted attempt to create a due process argument" (continued…)

Accordingly, as the instant jurisdictional dispute calls for development of a factual record before PennDOT, Hawbaker has failed to demonstrate that it has raised a purely legal challenge to PennDOT's jurisdiction over these debarment proceedings such that it should be excused from compliance with the exhaustion doctrine.

Next, Hawbaker argues that it need not exhaust its administrative remedies because it has raised a facial challenge to the constitutionality and validity of PennDOT's Prequalification Regulations insofar as they permit debarment solely based on a nolo contendere plea. PennDOT, in contrast, asserts that Hawbaker has failed to launch a constitutional attack upon any statutory scheme or otherwise that is sufficient to justify disregarding the exhaustion doctrine here. In presenting their arguments, however, Hawbaker and PennDOT appear to accept the premise that, so long as Hawbaker presents a substantial constitutional or validity challenge to PennDOT's regulations, Hawbaker is not required to exhaust its administrative remedies. This is not so. Of particular relevance here, our precedent is clear that raising a substantial constitutional or validity challenge alone is not enough to forgo application of the exhaustion doctrine and that, in asserting such challenges, a litigant must also demonstrate the absence or inadequacy of an administrative remedy.[17]

---

and concluded that the Commonwealth Court's intervention was likewise improper insofar as it had also sought to supervise how the PHRC should exercise its jurisdiction once established. *Id.* at 1359-60 & n.4.

[17] *See Commonwealth ex rel. Nicholas v. Pa. Lab. Rels. Bd.*, 681 A.2d 157, 161 (Pa. 1996) ("We have held that the doctrine of exhaustion of [administrative] remedies would not bar equitable intervention where there [is] both a substantial question of constitutionality *and* the absence of an adequate statutory remedy." (alterations and emphasis in original) (internal quotation marks omitted)); *Kowenhoven v. Cnty. of Allegheny*, 901 A.2d 1003, 1012 n.8 (Pa. 2006) (rejecting notion "that ordinary administrative review may be bypassed as a matter of course simply by adding a constitutional claim, no matter how tenuous, to a[ tax] assessment grievance" and that "what is required to confer jurisdiction on an equity court is the existence of a substantial question of constitutionality (and not a mere allegation) and the absence of an adequate (continued…)

Indeed, our Court has enforced this requirement under circumstances similar to the instant matter. In *Eisenberg I*, the Department of Public Welfare (DPW) issued a letter to a physician, suspending him from participating in the Pennsylvania Medical Assistance Program (Program) for three years and advising him of his right to appeal before the Hearing and Appeals Unit of DPW. *Eisenberg I*, 454 A.2d at 513. The physician initiated the appeal process but, before the hearing on his suspension took place, filed an application for special relief with the Commonwealth Court in which he raised for the first time a constitutional challenge to DPW's power to suspend him prior to a hearing. *Id.* at 514-15 & n.8. In disposing of the physician's application for special relief, the Commonwealth Court concluded that DPW's action constituted an adjudication within the meaning of the Administrative Agency Law,[18] and, as such, the physician was entitled to a pre-suspension hearing. *Id.* at 514. Accordingly, viewing the physician's application for special relief as addressed to its equitable powers, the Commonwealth Court enjoined DPW from taking further action against the physician. *Id.* On appeal, this Court concluded that the Commonwealth Court had erred in exercising equitable jurisdiction and awarding injunctive relief because the physician "had available legal means of redress which he did not fully pursue before resorting to equitable jurisdiction." *Id.* at 515. In particular, the Court explained that the physician could have fully pursued his administrative appeal, or he could have brought an action for money damages against

---

statutory remedy" (quoting *Borough of Green Tree v. Bd. of Prop. Assessments, Appeals and Rev. of Allegheny Cnty.*, 328 A.2d 819, 822 (Pa. 1974) (plurality)); *Cnty. of Berks*, 678 A.2d at 360 ("A party cannot avoid the requirement to exhaust administrative remedies merely by raising a constitutional challenge to the validity of a statute; '[t]he additional element required to confer equitable jurisdiction is either the absence of a statutorily-prescribed remedy or, if such a remedy exists, then a showing of inadequacy in the circumstances.'" (alteration in original) (quoting *Borough of Green Tree*, 328 A.2d at 822)).

[18] 2 Pa. C.S. §§ 501-508, 701-704.

the Commonwealth before the Board of Claims on a breach-of-contract theory. *Id.* at 515 & n.7.

Notably, the physician argued that the Commonwealth Court's actions were "proper because he had raised a constitutional due process challenge to [DPW]'s action of suspending him prior to a hearing," that "[a]dministrative agencies . . . are without power to resolve such constitutional questions," and that "equitable relief was proper since the available legal remedies did not provide relief for a due process violation." *Id.* at 515. In rejecting the physician's position, the Court explained:

> If we were to accept this argument, it would be a simple matter for any litigant to avoid the rulings of an administrative agency merely by challenging its authority on a constitutional basis. It is precisely in an effort to avoid this problem, that we have consistently held that equity will not intervene where a statutorily prescribed remedy at law is available without a clear showing that the remedy was inadequate.

*Id.* The Court added that the physician had "raise[d] only a constitutional question in support of his inadequacy argument" without setting forth a "separate allegation that the available statutory remedy is inadequate," which was "not enough." *Id.* at 515 n.9 (quoting *Borough of Green Tree*, 328 A.2d at 823). The Court explained that the physician was

> seeking reinstatement in the Program and yet he [did] not allege that the Appeals Unit lacks the power to lift his suspension by [DPW]. Furthermore, in view of the fact that [the physician] strenuously asserts that he has valid defenses against these charges, we are left to wonder why he sought an injunction before his statutory hearing . . . was held. Assuming that the Appeals Unit had the power to reinstate [the physician] and accepting the notion that [the physician] possessed valid defenses, we must conclude that [the physician] saw advantage in thwarting the administrative process by resorting to equity in Commonwealth Court, and disadvantage in pursuing a hearing before the Appeals Unit, in accordance with the legal remedy provided by statute. Whatever may be [the physician's] reasons for this choice, they do not offer adequate justification for judicial interference with the administrative process.

*Id.* The Court added:

> [W]e refuse to allow equity to intervene where available statutory remedies have not been exhausted and where there is a lack of sufficient challenge to the adequacy of these remedies. The administrative process should not

be weakened by unpredictable judicial intrusions in the absence of those circumstances which this Court has indicated are necessary prerequisites to such interference. The [Commonwealth Court], therefore, was without power to exercise equitable jurisdiction or impose injunctive relief.

*Id.* 515-16 (citation omitted). In view of the foregoing, even if we were to agree that Hawbaker raised a substantial constitutional or validity challenge to PennDOT's Prequalification Regulations for purposes of analyzing whether the exhaustion doctrine applies, Hawbaker still needs to demonstrate the absence of an adequate administrative remedy. As such, we turn to an analysis of that requirement.

PennDOT argues that Hawbaker has failed to make a clear showing that PennDOT's administrative debarment proceeding is unavailable or inadequate because: (1) any issues or defenses Hawbaker may seek to raise can be heard and decided in the proceedings on the order to show cause or the administrative debarment proceeding, which also affords full appellate rights to Hawbaker; (2) the only relief Hawbaker seeks is the avoidance of debarment, which relief can be obtained in the administrative proceedings or on appeal therefrom; and (3) Hawbaker may continue to bid on PennDOT contracts during the pendency of the administrative proceedings and, thus, will sustain no harm during that time. In retort, Hawbaker argues that it has demonstrated that PennDOT's debarment procedure is inadequate in that it will be held in the "wrong forum" under improper standards, will violate Hawbaker's due process rights, and is "futile" in that it will "result i[n] a foregone conclusion" of debarment. (Hawbaker's Brief at 22-25.) Hawbaker adds that it raises issues that should be resolved in a judicial forum, not an administrative proceeding, and, as such, its pursuit of administrative remedies would be "pointless." (*Id.* at 25 n.8 (quoting *Parsowith v. Dep't of Revenue*, 723 A.2d 659, 662 (Pa. 1999)).)

We agree with PennDOT. In doing so, we return to PennDOT's decision to initiate debarment proceedings against Hawbaker pursuant to the rule-to-show cause procedure

as provided by GRAPP and PennDOT's Supplemental Regulations.[19]   In this regard,

Section 35.14 of GRAPP provides:

> Whenever an agency desires to institute a proceeding against a person under statutory or other authority, the agency may commence the action by an order to show cause setting forth the grounds for the action. The order will contain a statement of the particulars and matters concerning which the agency is inquiring, which shall be deemed to be tentative and for the purpose of framing issues for consideration and decision by the agency in the proceeding, and the order will require that the respondent named respond orally, or in writing (as provided in § 35.37 (relating to answers to orders to show cause)) or both.

1 Pa. Code § 35.14.  Section 491.9 of PennDOT's Supplemental Regulations add to the

above provision of GRAPP and outline a procedure by which, *inter alia*:  (1) PennDOT

files a written request for the order to show cause; (2) a PennDOT hearing officer issues

the order to show cause; (3) "the docket clerk . . . forward[s] a copy of the order to the

respondent, directing the respondent to show cause why the subject action should not be

taken by . . . [PennDOT];" and (4) the respondent is afforded the opportunity to file a

written answer within 30 days of the mailing of the notice upon pain of waiving any

---

[19] GRAPP generally "governs the practice and procedure before agencies of the Commonwealth."  1 Pa. Code § 31.1(a).  GRAPP, however, "is not applicable to a proceeding before an agency to the extent that the agency has promulgated inconsistent regulations on the same subject."  1 Pa. Code § 31.1(c).  To this point, Section 491.1 of PennDOT's Supplemental Regulations provide:

> This chapter supplements and supersedes inconsistent provisions in [GRAPP].
>
> (1) This chapter applies to activities and proceedings before [PennDOT] in matters under 2 Pa.C.S. §§ 501--508 and 701--704 (relating to the Administrative Agency Law) which are not vested in other bodies by law.
>
> (2) To the extent this chapter does not supplement nor supersede [GRAPP], [GRAPP] will apply to activities and proceedings before [PennDOT].

67 Pa. Code § 491.1.

objections to PennDOT's proposed action. *See* 67 Pa. Code § 491.9(a)-(b), (d).

Section 491.9 further provides:

> (e) *Notification to parties.* Upon timely filing of an answer to an order to show cause, the docket clerk will notify all parties of referral of the matter to the [PennDOT] hearing officer for the scheduling of a hearing.
>
>> (1) Timely filing of an answer to the order to show cause will not operate as an automatic stay or supersedeas of action taken by [PennDOT] prior or subsequent to the receipt of the order to show cause.
>>
>> (2) Persons initiating a formal request for stay or supersedeas shall direct their applications to the [PennDOT] hearing officer.
>
> (f) *Scheduling of hearing.* The [PennDOT] hearing officer will schedule a hearing and will direct the docket clerk to issue notice to all parties of the time and place of the hearing.
>
> (g) *[PennDOT] hearing officer.* The [PennDOT] hearing officer will preside at the hearing or scheduled prehearing conference and will rule on questions regarding the admissibility of evidence or other matters relating to the conduct of the hearing.
>
> (h) *Waiver.* Upon the failure of the respondent to file a timely answer to the order to show cause, the [PennDOT] hearing officer may direct the docket clerk to send to all parties a notice that objections to the order to show cause are deemed irrevocably waived and the proposed action of [PennDOT] is deemed approved.

67 Pa. Code § 491.9(e)-(h).[20]

---

[20] GRAPP and PennDOT's Supplemental Regulations also contain various provisions that govern administrative hearings and motions practice before PennDOT and outline the authority of PennDOT hearing officers. *See, e.g.*, 1 Pa. Code §§ 35.121-.128 (GRAPP provisions pertaining to hearings); 1 Pa. Code §§ 35.177-.180 (GRAPP provisions relating to motions); 1 Pa. Code §§ 35.185-.190 (GRAPP provisions pertaining to presiding officers); 67 Pa. Code §§ 491.3 (Request for Hearing); 67 Pa. Code § 491.6 (Notice and Conduct of Hearing); 67 Pa. Code § 491.10 (Hearings). These provisions indicate that, at the hearing, "[p]arties and staff counsel shall have the right of presentation of evidence, cross-examination, objection, motion and argument." *See e.g.*, 1 Pa. Code § 35.126(a). Moreover, the presiding officer is generally tasked with, *inter alia*, ruling on evidentiary matters and motions. *See, e.g.*, 1 Pa. Code § 35.162 (explaining that "[t]he presiding officer, subject to [Section] 35.190 [of GRAPP] (relating to appeals to agency head from rulings of presiding officers), shall rule on the admissibility of evidence"); 1 Pa. Code § 35.128 ("At a stage of the hearing the agency head or the presiding officer may call for further evidence upon an issue, and require the evidence to be presented by the party or (continued…)

PennDOT's Supplemental Regulations further provide that, "[f]ollowing the hearing and the timely submission of any posthearing filings, the [PennDOT] hearing officer will prepare and file a proposed report" that contains, *inter alia*, findings of fact and conclusions of law. 67 Pa. Code § 491.11(a)-(b); *see also* 1 Pa. Code §§ 35.201-35.207 (GRAPP provisions relating to proposed reports generally). Thereafter, "[a] party desiring to appeal to the Secretary [of PennDOT] may file exceptions to the proposed report within 30 days after the mailing date of the proposed report by the docket clerk." 67 Pa. Code § 491.12(a); *see also* 1 Pa. Code §§ 35.211-14 (relating to exceptions to proposed reports). GRAPP further provides that "[a]djudications of an agency head shall be final orders," including "[a]djudications by the agency head upon appeal of proposed reports by participants[] by filing exceptions." 1 Pa. Code § 35.226(a)(2). As concerns a right of appeal from agency adjudications, the Administrative Agency Law provides that "[a]ny person aggrieved by an adjudication of a Commonwealth agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals."[21] 2 Pa. C.S. § 702. Pertinent here, the Commonwealth Court has "exclusive jurisdiction of appeals from final orders of government agencies," including "[a]ll appeals from Commonwealth agencies under Subchapter A of Chapter 7

---

parties concerned or by the staff counsel, either at that hearing or at the adjournments thereof."); 1 Pa. Code § 35.187(4), (7), (9) (providing that presiding officers shall have authority "to rule upon offers of proof and receive evidence," "dispose of procedural matters," and submit proposed reports); 67 Pa. Code § 491.6(c), (g), (h) (providing PennDOT hearing officer with authority to decide all motions, including dispositive motions, as well as "petitions, requests for supersedeas, discovery requests or other matters presented by the parties"); 67 Pa. Code § 491.10(c) (providing that PennDOT hearing officer will preside at hearing and rule on admissibility of evidence or other matters relating to conduct of hearing).

[21] An "[a]djudication" is defined for purposes of the Administrative Agency Law as "[a]ny final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made." 2 Pa. C.S. § 101.

of Title 2 (relating to judicial review of Commonwealth agency action)." 42 Pa.C.S. § 763(a)(1); *see also* 67 Pa. Code § 491.13 (requiring certified record to be forwarded to Commonwealth Court "[i]f a final order of the Secretary [of PennDOT] is appealed to [that court] under 42 Pa. C.S. § 763").

The foregoing provisions support PennDOT's position that the issues Hawbaker raises can be adjudicated through PennDOT's administrative proceedings on the rule to show cause or in a subsequent appeal. Indeed, Hawbaker's arguments fail to demonstrate otherwise.[22] Nor does Hawbaker dispute that it will sustain no harm during the pendency of the administrative proceedings as concerns its ongoing business and that, ultimately, PennDOT has the power to decide not to debar Hawbaker. *See* 67 Pa. Code § 457.13(a) (providing that PennDOT "*may* temporarily suspend or *may* debar[] . . . a contractor" for listed reasons).[23] Moreover, while Hawbaker argues that PennDOT's administrative remedy is inadequate because PennDOT is the wrong forum

---

[22] We note that, insofar as Hawbaker argues that PennDOT's administrative remedy is inadequate because "an administrative agency cannot find its own enabling legislation to be unconstitutional," (Hawbaker's Brief at 20), Hawbaker is challenging the constitutionality of the Prequalification Regulations, not the SHL. As such, Hawbaker fails to convince us that the exhaustion doctrine does not apply based upon this precept.

[23] To the above point, we observe that, following this Court's decision in *Eisenberg I*, DPW terminated the contractual right of the physician involved to participate in the Program and declared him ineligible to reapply for preferred provider status for five years on the basis of his *nolo contendere* plea to federal mail fraud charges. *Eisenberg v. Dep't of Pub. Welfare*, 516 A.2d 333, 334 (Pa. 1986) (*Eisenberg II*). While this Court held on appeal that imposition of the physician's federal sentence on the *nolo contendere* plea constituted a "conviction" under the applicable DPW regulation governing suspension and that the physician was not entitled to introduce evidence of his innocence in the administrative proceedings before DPW, the Court further concluded that DPW erred by not holding a hearing on the appropriateness of the penalty because the imposition of a penalty on conviction was not automatic pursuant to the regulation at issue. *Id.* at 334-38. Rather, because the regulation provided that DPW "may" impose a penalty for conviction, thereby requiring DPW to exercise its discretion in determining the penalty to be imposed, the Court concluded that DPW erred by imposing a penalty without giving the physician an opportunity to present evidence on the appropriateness of the penalty. *Id.* at 337-38.

to adjudicate debarments based on PWA violations, PennDOT will apply an improper standard by not considering whether Hawbaker intentionally violated the PWA, PennDOT's administrative proceeding will violate its due process rights by failing to provide Hawbaker a meaningful opportunity to be heard, and PennDOT's proceeding will be "futile" or "pointless" and result in a "foregone conclusion" of debarment, (Hawbaker's Brief at 23-25), Hawbaker has failed to make a clear showing of these alleged inadequacies. Put simply, all of Hawbaker's arguments are grounded upon facts that have yet to be borne out.[24]

---

[24] Pertinently, notwithstanding any representations or arguments PennDOT has made as advocate relative to Hawbaker's debarment, the administrative rule-to-show cause procedure to which Hawbaker is subject will be held before PennDOT in its distinct role as adjudicator. Insofar as this matter implicates both the "adjudicatory functions" and "representative functions" of PennDOT, we observe that PennDOT's Supplemental Regulations provide the following safeguards against the commingling of those functions:

> (a) *Separation of adjudicatory function.* The adjudicatory function performed in accordance with [the Supplemental Regulations] and [GRAPP] will be separated from the function of representing [PennDOT] in administrative hearing matters. [The Supplemental Regulations] prescribe[] that an administrative hearing officer will preside over any hearing and, if exceptions are filed by any party, the decision ultimately is made by the Secretary[ of PennDOT]. [PennDOT]'s Chief Counsel advises the Secretary [of PennDOT] in his adjudicatory capacity.

> (b) *Ex parte discussions.* Under no circumstances may any [PennDOT] attorney representing [PennDOT] in an administrative hearing matter, or any [PennDOT] employee involved in such a matter, discuss the case ex parte with the Administrative Hearing Officer, the Chief Counsel or the Secretary[ of PennDOT].

> (c) *Prohibited discussions with employees.* The Administrative Hearing Officer, the Chief Counsel and the Secretary [of PennDOT] may not discuss with, or exercise any supervisory responsibility over, any employee with respect to an administrative hearing matter with which that employee is involved.

> (d) *Designation by Chief Counsel and Secretary [of PennDOT].* If it becomes necessary for the Chief Counsel or the Secretary [of PennDOT] to become involved on behalf of [PennDOT] in any administrative hearing matter, they are prohibited from participating in the adjudication of the case

(continued…)

Moreover, with respect to Hawbaker's inadequacy arguments, we find our decision in *County of Berks* to be instructive. In that case, the Pennsylvania Labor Relations Board (PLRB) "certified the United Steelworkers of America, Local 3733, ([]Steelworkers[]) as the bargaining representative of all assistant district attorneys and assistant public defenders in Berks County ([]County[])." *Id.* at 357. After the Steelworkers and County entered into a collective bargaining agreement (CBA), and in the midst of negotiating a successor contract, the County filed a unit clarification petition with the PLRB. In response, the Steelworkers filed an unfair labor practice charge with the PLRB, claiming that the County failed to bargain with the Steelworkers as a representative of the collective bargaining unit. While proceedings on the unit clarification petition and unfair labor practice charge were ongoing before the PLRB, and after unsuccessfully seeking extraordinary relief from this Court, the County filed a petition for review in the Commonwealth Court's original jurisdiction. The County sought declaratory and injunctive relief on three claims relevant here: (1) whether the collective bargaining unit violated criminal defendants' Sixth Amendment right to effective assistance of counsel; (2) whether application of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended and repealed*, *in part*, 43 P.S. §§ 1101.101-.2301, to the matter violated the exclusive jurisdiction of this Court over the supervision of the conduct of attorneys and violated the rules of professional conduct; and (3) whether assistant district attorneys and assistant public defenders were management level or confidential employees not entitled to protections afforded by PERA. *Id.* at 357-58. The PLRB and

and shall designate appropriate individuals to exercise their adjudicatory functions.

67 Pa. Code § 491.2a. In view of these safeguards in particular, we trust that PennDOT will give due consideration to the issues Hawbaker raises in the context of the administrative proceedings.

Steelworkers filed preliminary objections in response, arguing, *inter alia*, that the County had failed to exhaust its administrative remedies. The Commonwealth Court agreed and, thus, sustained the preliminary objections.

This Court affirmed on appeal. Notably, the County argued before the Court that it lacked "an adequate remedy at law because the PLRB has not been given any statutory authority or implicit power to address suitably either the Sixth Amendment rights of criminal defendants or the ethical rules governing attorneys." *Id.* at 360. The County also emphasized that this "Court has exclusive jurisdiction over the supervision of the conduct of attorneys." *Id.* This Court rejected the County's contentions:

> In these arguments, [the County is] not focusing on whether [it] can obtain an adequate remedy from the PLRB, but rather are focusing on whether [it] can obtain that adequate remedy via disposition of particular issues. That is not the appropriate inquiry. In determining whether a litigant will be excused from exhausting administrative remedies, we look to whether that litigant has an adequate administrative remedy. Thus, in *Ohio Casualty Group*, *supra*, and *Feingold v. Bell of Pennsylvania*, . . . 383 A.2d 791 ([Pa.] 1977), we allowed the litigants to bypass the agency in question because the agency had no mandate to provide the requested remedies. We have not, however, allowed a litigant to circumvent the administrative process where the litigant can achieve full relief in front of the agency but the relief may be granted on bases different from those advocated by the litigant.

> The County . . . can attain from the PLRB the remedies it requests. In resolving the County's pending petition for unit clarification, the PLRB could, for example, divide the unit into two units, one consisting of assistant district attorneys and the other consisting of assistant public defenders. Such a remedy could fully address the County's concerns raised in Count I that the combined bargaining unit could violate the Sixth Amendment rights of criminal defendants. Furthermore, the PLRB could accept the County's contention that all members of the bargaining unit are managerial and/or confidential employees who are precluded from joining any bargaining unit under PERA. This would provide the County with the remedy that PERA would not be applied to the assistant district attorneys or the assistant public defenders; such a remedy would render moot any concerns the County has over whether application of PERA to these parties infringes on this [C]ourt's exclusive jurisdiction over the regulation of attorneys. Thus, because the County has, in the PLRB, a forum through which it could obtain the very relief it ultimately desires in this matter, we hold that the Commonwealth

Court was correct in determining that the County had failed to exhaust administrative remedies.

*Id.* Of further significance, this Court also rejected the County's claim "that requiring the County to submit itself to the PLRB would deny the County procedural and substantive due process because the PLRB is incapable of guaranteeing a fair decisional process."

*Id.* The Court explained:

> In support of this contention, [the County] refer[s] to several matters where issues similar to the ones in the matter *sub judice* have been presented to the PLRB; [the County] focus[es] on how the PLRB has either ruled in a manner which would be unfavorable to [the County's] position or did not rule at all on the Sixth Amendment or professional ethics issues. This argument fails. Simply because the weight of decisions from a forum are against a party, or they provide no guidance on issues concerning that party, does not mean that party will be denied due process by that forum.

*Id.* at 360-61 (citations omitted). The Court continued by observing that its

> determination in no way deprived the County of its opportunity to have these issues fully explored. Issues identical to the ones presented in this matter are pending before the PLRB. The administrative process, which could culminate in appellate review of the PLRB's decision, ensures that the County's rights will be protected.

*Id.* at 361 n.5.

Here, we similarly see no obstacle preventing PennDOT, in resolving the rule to show cause, from adjudicating Hawbaker's challenges in an adequate manner. We likewise conclude that PennDOT's administrative process, "which could culminate in appellate review of [PennDOT's] decision," is not futile[25] and will "ensure[] that [Hawbaker's] rights will be protected." *Cnty. of Berks*, 678 A.2d at 361. n.5. As such, we conclude that PennDOT is entitled to relief on its claim that Hawbaker is not entitled to preliminary injunctive relief on the ground that Hawbaker has failed to exhaust its administrative remedies. It is our expectation that PennDOT will discharge its

---

[25] In rendering this conclusion, we observe that "[i]t may not be assumed that an agency will act in an irresponsible or arbitrary manner without judicial supervision and direction." *Mercy Hosp. of Pittsburgh*, 451 A.2d at 1360.

adjudicatory functions in good faith by allowing Hawbaker to raise and develop every issue it chooses to advance and by giving each issue its due consideration, so that an adequate record is created should appellate review become necessary.

## IV. CONCLUSION

For the foregoing reasons, we agree with PennDOT that the Commonwealth Court erred in exercising equitable jurisdiction to award Hawbaker preliminary injunctive relief in this matter.[26]  Accordingly, we reverse the order of the Commonwealth Court, and we remand the matter for further proceedings consistent with this Opinion.[27]

Chief Justice Todd and Justices Donohue, Dougherty, Wecht and Mundy join the opinion.

---

[26] Given our conclusion above, we need not address PennDOT's remaining issues on appeal.

[27] On March 10, 2023, PennDOT filed in this Court an "Application to Reinstate Automatic Supersedeas" (Application).  PennDOT submitted that its instant appeal from the Commonwealth Court's decision awarding Hawbaker preliminary injunctive relief in *Hawbaker I* served as an automatic supersedeas, effectively lifting the injunction, pursuant to Pa.R.A.P. 1736(b) (providing generally that appeal by Commonwealth or any officer thereof acting in his or her official capacity "shall operate as a *supersedeas* in favor of such party, which *supersedeas* shall continue through any proceedings in the United States Supreme Court").  PennDOT further asserted that, in light of those circumstances and the Commonwealth Court's subsequent disposition of PennDOT's preliminary objections in *Hawbaker III*, PennDOT again proceeded administratively against Hawbaker by issuing an amended order to show cause why Hawbaker should not be debarred on February 13, 2023.  In response, Hawbaker filed in the Commonwealth Court an application to vacate the automatic supersedeas, which the Commonwealth Court granted by per curiam order dated March 2, 2023.  In its Application to this Court, PennDOT argues that the Commonwealth Court erred in terminating the automatic supersedeas and requests that this Court reinstate it.  Upon review of the Application and Hawbaker's answer thereto, filed on March 20, 2023, and based upon our disposition herein, we dismiss PennDOT's Application as moot.